[Cite as *State v. Pablo*, 2017-Ohio-8834.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-888 |
| v. | : | (C.P.C. No. 16CR-1476) |
| David Pablo, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 5, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, *Steven L. Taylor*, and *Valerie B. Swanson*, for appellant. **Argued:** *Valerie B. Swanson.*

**On brief:** *Yousef M. Faroniya*, for appellee. **Argued:** *Yousef M. Faroniya.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals a decision of the Franklin County Court of Common Pleas issued on December 21, 2016 which suppressed statements the defendant-appellee, David Pablo, made to the police in an interrogation on September 24, 2014. Because Pablo was not afforded the presence of a parent or responsible adult in determining whether to waive his *Miranda*[1] rights, because he had no prior experience with the police, because English was not his first or primary language, because evidence suggested his level of intelligence was not high, and because he indicated that he signed the rights waiver form because he thought he had to, we agree with the trial court. Under the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

totality of the circumstances, Pablo's *Miranda* waiver was not valid and Pablo's statement to the police was correctly suppressed.

## I.   FACTS AND PROCEDURAL HISTORY

{¶ 2}   On September 24 and 25, 2014, Pablo was charged as a juvenile with three counts of rape, two counts of kidnapping, one count of gross sexual imposition, and one count of felonious assault in connection with two incidents involving two different women on September 9 and 22, 2014.   (Sept 24, 2014 Compl. Franklin C.P. No. 14JU-12291; Sept. 25, 2014 Compl. Franklin C.P. No. 14JU-12370.)   Following proceedings in the Juvenile Division on both cases, the Juvenile Division issued an entry on March 14, 2016 transferring the case to the General Division of the Franklin County Court of Common Pleas for criminal prosecution of Pablo as an adult.   (Mar. 14, 2016 Bindover Entry.)   On March 23, a grand jury indicted Pablo as an adult for 14 offenses similar to the juvenile charges in connection with the same two incidents.   (Mar. 23, 2016 Indictment.)   Pablo pled not guilty. (Mar. 30, 2016 Plea Form.)

{¶ 3}   Approximately four months later, on August 3, 2016, Pablo filed a motion to suppress statements made to the police during an interrogation on September 24, 2014. (Aug. 3, 2016 Mot. to Suppress.)   On December 5, 2016, the trial court held a hearing on the matter.   (Dec. 5, 2016 Hearing Tr., filed Feb. 6, 2017.)   At the hearing, the State presented a *Miranda* rights form, signed by Pablo, and a video recording of the interrogation. (State's Exs. 1-2.)   In addition, three witnesses testified, one of the detectives who interviewed Pablo, Pablo himself, and Pablo's mother.

{¶ 4}   The detective testified first.   He testified that after he became suspicious (for reasons which are not disclosed in the record) that Pablo was involved in the incidents with the two women, he traveled to Pablo's school.   (Hearing Tr. at 6, 16.)   The detective said that Pablo had been brought to an administrator's office at the school and that after telling Pablo the police needed to talk to him, he had a patrol officer transport Pablo to the Franklin County Sheriff's Office.   (Hearing Tr. at 6-7, 16-19.)   The detective testified that a "translator" from the school called Pablo's parents but the detective admitted he was not in the room when the call took place; he testified that, to the extent he could overhear, he did not understand what he heard.   (Hearing Tr. at 18, 24.)

{¶ 5}   Video revealed that at the Franklin County Sheriff's Office, two detectives interviewed Pablo for approximately 26 minutes in an interrogation room.   (State's Ex. 2.)

In addition to having Pablo sign the *Miranda* rights form, one of the detectives read Pablo the rights portion of the form verbatim, pausing after each right to ask Pablo if he understood. (State's Ex. 2 at 0:15-0:56.) In each pause, Pablo nodded to some visible degree. *Id.* After the reading, Pablo signed the form. (State's Ex. 2 at 0:54-1:02.) The form provided in relevant part as follows:

> Before we ask you any questions you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions, and to have him present with you during questioning.
>
> If you are unable to pay a lawyer, one will be appointed for you prior to any questioning, if you so desire.
>
> If you wish to answer questions now, without a lawyer present, you have the right to stop answering questions at any time.
>
> You also have the right to stop answering at any time until you talk to a lawyer.

(State's Ex. 1.)

{¶ 6} Only the portion of the video involving the reading of rights was played during the hearing but the entire video was introduced as an exhibit. (Hearing Tr. at 15.) Although the rest of the video was not played during the hearing, the testifying detective stated that the interrogation remained calm throughout the entire 26-minute period, and Pablo was neither threatened nor promised anything. *Id.* The detective confirmed that no parent or adult responsible for Pablo was present during the interrogation and that the police made no attempt to contact any such person. (Hearing Tr. at 24.)

{¶ 7} Pablo testified that on the date of the interview, September 24, 2014, he had just turned 16 and was in ninth grade (having been held back). (Hearing Tr. at 27.) He testified that he was a "D" student and that while he understands and speaks English fully (having lived in the United States his whole life), his first and primary language is Spanish. (Hearing Tr. at 28, 31.) He recounted that the principal took him out of class and to the

office where a detective and two officers were waiting. (Hearing Tr. at 28-29.) The detective told him to put his hands behind his back and he was then taken to the police station. (Hearing Tr. at 29.) He had never been interrogated or even visited a police station before. *Id.* No one offered him a phone call, or to let someone know where he was, or to notify his parents. *Id.* Although he admitted that he understood that the police were telling him he had the right to talk to a lawyer, he signed the form because he thought he had to sign. (Hearing Tr. at 29-32.) He did not read it. (Hearing Tr. at 30.) He confirmed that the detectives made neither threats nor promises and admitted that he never asked permission to telephone his parents. (Hearing Tr. at 32.)

{¶ 8} Pablo's mother testified by means of an interpreter. (Hearing Tr. at 35.) She testified that Pablo did not come home from school in a timely fashion and that she had been worried. (Hearing Tr. at 35-36.) She only found out that he had been arrested around midnight when her sister saw it on the news and contacted her. *Id.* She testified that the school had contacted her before at home and knew her number. (Hearing Tr. at 36.) Despite the fact that she was home that day, no one from the school or the police contacted her. *Id.*

{¶ 9} In reaching a decision, the trial court recounted the factual circumstances of the case. (Dec. 21, 2016 Entry at 1-2.) It particularly noted that the defendant was not a good student, that he had no experience with the police, that the police and school "did very little to arrange for the defendant to have any independent advice as to his rights," and that he was "taken from his normal environment and [] placed in intimidating surroundings with no familiar support." *Id.* at 2. Accordingly, the court concluded that "this young defendant was too likely to say whatever he believed the authorities wanted him to say," and thus "the statements on the subject date should be suppressed." *Id.*

{¶ 10} Pursuant to R.C. 2945.67(A), Crim.R. 12(K), and App.R. 4(B)(4), the State has appealed as of right, certifying that "the trial court's ruling on the motion to suppress has rendered the State's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." (Dec. 28, 2016 Notice of Appeal.)

## II. ASSIGNMENT OF ERROR

{¶ 11} The State asserts a single assignment of error for review:

THE TRIAL COURT ERRED WHEN IT SUPPRESSED DEFENDANT'S VOLUNTARY STATEMENTS OBTAINED AFTER A VALID WAIVER OF HIS *MIRANDA* RIGHTS.

## III. DISCUSSION

{¶ 12} Generally speaking:

> "The determination of whether there has been an intelligent waiver of [the] right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

*State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 35.

{¶ 13} Due process protects juveniles with the result that they are afforded the right to *Miranda* warnings. *In re Gault*, 387 U.S. 1, 55 (1967). With respect to whether a juvenile has validly waived his *Miranda* rights, the Supreme Court of Ohio has said:

> If custodial interrogation continues in the absence of an attorney after a police officer advises a suspect of his rights, the government bears "a heavy burden" to demonstrate by a preponderance of the evidence that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to the police. *Miranda* at 475, citing *Escobedo v. Illinois*, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), fn. 14; [*Colo. v. ]Connelly*, 479 U.S. [157,] 169[(1986)]. *See also State v. Treesh*, 90 Ohio St.3d 460, 470, 2001 Ohio 4, 739 N.E.2d 749 (2001) (recognizing requirement of knowing, intelligent waiver). A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact that the suspect eventually confessed. *Miranda* at 475. Rather, the record must show "'that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'" *Id.*, quoting *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). If the state does not satisfy its burden, "no evidence obtained as a result of interrogation can be used." *Id.* at 479.
>
> To determine whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights, courts examine the totality of the circumstances. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). When the suspect is a juvenile, the totality of the circumstances includes "the juvenile's age, experience, education, background, and intelligence" as well as

> his "capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

*State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, ¶ 23-24.

{¶ 14} Whether a juvenile has voluntarily confessed (following a valid waiver of rights under *Miranda*), the Supreme Court has explained:

> In deciding whether a juvenile's confession is involuntarily induced, [a trial] court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement.

*In re Watson*, 47 Ohio St.3d 86 (1989), paragraph one of the syllabus.

{¶ 15} Some jurisdictions have recognized an "independent advice/interested adult" principle which holds that a juvenile can only validly waive his rights to an attorney and to remain silent if both the child and a parent (or other "interested adult") are advised of those rights and are given the opportunity to confer regarding the advisability of waiving, free from coercion, force, or inducement. *Id.* at 89. The Supreme Court has expressly declined to adopt the "independent advice/interested adult" view as a per se rule in juvenile interrogations. *Id.* at 89-90. But the Court has not forbidden it as a consideration under the "totality of the circumstances." *Id.* at paragraph one of the syllabus. And the Supreme Court has explained that, "[a] juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary." *Barker* at ¶ 24, citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 96.

{¶ 16} In reviewing decisions made on motions to suppress, we afford deference to the trial court's factual determinations and review the trial court's recitation of historical facts for "clear error;" however, we review statements of law and their application to facts de novo. *See, e.g., Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 17} Consistent with the record, the trial court noted in its decision that Pablo had just turned 16 at the time of the interrogation, was a poor student repeating ninth grade,

and had no previous contact with the police. (Dec. 21, 2016 Entry at 2.) The record is clear that the trial court considered " 'the juvenile's age, experience, education, background, and intelligence' as well as his 'capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.' " *Barker* at ¶ 24, quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

{¶ 18} These considerations are also relevant and significant to determining voluntariness such as, "the age, mentality and prior criminal experience of the accused." *In re Watson* at paragraph one of the syllabus. In admitting the videotaped confession and hearing testimony about its circumstances and character, the trial court also would have considered (though it did not explicitly mention) other voluntariness factors including, "the length," (short, 26 minutes), "intensity," (low key) "frequency of interrogation" (one session), and "the existence of physical deprivation or inducement" (essentially none[2]). *Id.*; State's Ex. 2.

{¶ 19} The trial court also considered what the school and police did (essentially nothing) to ensure that Pablo's parents were aware of the situation and could assist Pablo in understanding his rights. (Dec. 21, 2016 Entry at 1-2.) This is important because, "[a] juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary." *Barker* at ¶ 24. And parental involvement may have been of enhanced importance here, as the trial court noted. Pablo did not achieve high grades in school. He had no prior experience with the police. And Pablo's first and primary language is Spanish, not English. (Dec. 21, 2016 Entry at 2.) There is further evidence of this from the detective's testimony that an interpreter had to call Pablo's home from his school.

{¶ 20} We find the trial court acted within the valid exercise of its factfinding discretion to conclude that the evidence did not support a finding that Pablo's waiver of his *Miranda* rights, unaccompanied by a parent or interested adult to assist him, was knowing and voluntary. Under the law, someone in their early to mid-teens " 'cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions.' " *Barker* at ¶ 39, quoting *Gallegos v. Colorado*, 370 U.S. 49, 53-54 (1962).

---

[2] Though we note that at one point a detective advised Pablo that he needed to start telling the truth because he was in a "world of trouble." (State's Ex. 2 at 6:44-6:50.)

Accordingly, we agree that, under all of the factual circumstances cited by the trial court and as contained in the record, Pablo's waiver of his *Miranda* rights was not knowing and voluntary and as such does not stand. At a minimum, he should have been accompanied by a parent or interested adult to aid him in understanding and determining whether to waive his *Miranda* rights. And when this absence of a parent is considered in conjunction with the other circumstances in Pablo's case (age, experience, education, and background), including the trial court's observation that Pablo said he signed the waiver because he thought he had no choice, we agree that Pablo's waiver, under the circumstances, was not valid. (Dec. 21, 2016 Entry at 2.)

{¶ 21} We overrule the State's sole assignment of error and affirm the trial court's decision suppressing Pablo's statements, including his confession, to the police.

## IV. CONCLUSION

{¶ 22} Consistent with Supreme Court of Ohio precedent, the trial court expressly considered Pablo's age, mentality, experience, education, background, and intelligence. It found, consistent with the record, indications that Pablo's intelligence level was not high, English was not his first or primary language, and he had no prior experience with the police. The trial court also validly considered, under the totality of the circumstances, that Pablo was not provided access to a parent or interested adult to help him to understand his rights. Under the factual circumstances, the trial court did not err in determining that Pablo did not validly waive his rights and that his statements should be suppressed. We overrule the State's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and HORTON, J., concur.