[Cite as *State v. A.P.*, 2018-Ohio-3423.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2018-01-006 |
| | : | O P I N I O N |
| - vs - | | 8/27/2018 |
| | : | |
| A.P., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 17-N000728

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Kevin D. Hughes, 20 South Main Street, Springboro, Ohio 45066, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Appellant, A.P., appeals from his adjudication as a delinquent child in the Warren County Court of Common Pleas, Juvenile Division, arguing that the juvenile court erred by denying his motions to suppress evidence and his request for a *Franks* hearing.[1]

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar for the purposes of issuing this opinion.

For the reasons discussed below, we affirm the juvenile court's decisions.

{¶ 2} In the spring of 2017, the Warren County Drug Task Force and the Springboro Police Department were investigating a drug trafficking operation run out of appellant's home in Springboro, Ohio. Officers had been advised that appellant, then 15 years old, was selling LSD to approximately 20 to 30 Springboro high school students.

{¶ 3} On May 19, 2017, Detective Antwaun Scott sought a warrant to search appellant's home for controlled substances, namely LSD, and any tools, instruments, equipment, or paraphernalia used to manufacture, store, protect, or sell controlled substances. In an affidavit submitted in support of the search warrant, Scott stated that on April 1, 2017, two Springboro police officers observed a grey Nissan travel to appellant's residence, and after staying for approximately one minute, drive away from the residence – behavior that Scott averred was "consistent with drug trafficking." A traffic stop and subsequent search of the grey Nissan resulted in the discovery of ten hits of suspected LSD. The "defendant" in the grey Nissan admitted to buying the LSD from appellant.

{¶ 4} The affidavit stated that Scott spoke with the "defendant" in the grey Nissan during the second week of April, and the "defendant" informed Scott that appellant sold LSD and marijuana to multiple juveniles throughout the community. The "defendant" also told Scott that appellant often hosted parties at his residence, and that multiple juveniles use LSD, marijuana, and alcohol in the basement of appellant's home. Scott stated that through his own investigative efforts, he located several photographs on Snapchat that appellant had uploaded, which depicted appellant taking Xanax and LSD.

{¶ 5} The affidavit further stated that on May 16, 2017, the Springboro Police Department received a complaint of drug trafficking at appellant's home. The complainant stated that within a two-hour time period, approximately 12 cars had pulled into appellant's driveway. A "tall lanky kid" then exited appellant's home, walked to the car, and made a

- 2 -

hand-to-hand transaction before he reentered appellant's home and the vehicles drove off.

{¶ 6} Scott stated he conducted surveillance on appellant's home on May 16, 2017, and observed two males wearing backpacks exit the home and enter a blue Hyundai before driving off. One of the males, the passenger, was approximately 6' 2" tall. Scott followed the vehicle and relayed its location to two other officers, who initiated a traffic stop. The 18-year-old driver, Garrison Hirt, was subsequently arrested for driving under the influence, possession of tramadol, possession of methylphenidate, and possession of marijuana. The passenger, A.M., a minor, was found to be in possession of seven small packages of marijuana that were packaged for sale.

{¶ 7} Detective Scott spoke with Hirt, who had waived his *Miranda* rights, and Hirt advised Scott that the tramadol and methylphenidate were not his. However, Hirt admitted that the marijuana found on him was his, and he stated he purchased the marijuana from A.M. for $20. He also admitted he had left a party hosted by appellant.

{¶ 8} Finally, the affidavit stated that on May 19, 2017, Scott spoke with a confidential informant who stated appellant posted a status on Snapchat that there was going to be a party that evening. Scott stated that he "[knew] through his training and experience that juveniles host parties in the late evening hours after 8 p.m."

{¶ 9} Scott's application for a warrant was granted by a judge, and on the evening of May 19, 2017, law enforcement executed a search of appellant's home. Upon entering the home, officers discovered appellant's mother and sister upstairs. Appellant and four of his male friends, three of whom were juveniles, were found in the home's basement. Appellant and his friends were handcuffed and escorted outside the home. Appellant cooperated with law enforcement by showing them where LSD could be found in the home. Officers recovered six hits, or approximately 0.02 grams, of LSD in the basement as well as a bong.

{¶ 10} Appellant was then twice interviewed in front of his home in an unmarked police

vehicle by Detective Scott and Detective Dan Schweitzer. The first interview lasted less than 30 minutes and the second interview, which occurred about an hour after the first interview ended, lasted approximately 11 minutes. Appellant did not have a parent or legal guardian present during either interview, and he made incriminating statements to law enforcement, admitting that he purchased LSD online using bitcoin currency, had the drugs mailed to his house, and sold the drugs to 20 to 30 high school students. Appellant also admitted that earlier that evening, he had purchased six hits of LSD after he and his friends combined their money to purchase 38 total hits. Appellant indicated the LSD found in the basement was his, and that he had attempted to hide the drugs when law enforcement first arrived on scene to conduct the search.

{¶ 11} On August 14, 2017, appellant was charged by complaint with (1) trafficking in drugs in violation of R.C. 2925.03(A)(1), a felony of the third degree if committed by an adult, (2) possession of controlled substances in violation of R.C. 2925.11(A), a felony of the fourth degree if committed by an adult, and (3) possession of a controlled substance in violation of R.C. 2925.11(A), a felony of the fifth degree if committed by an adult. Appellant entered a denial to the charges.

{¶ 12} On October 4, 2017, appellant filed two motions to suppress. The first motion sought to suppress the incriminating statements appellant made to law enforcement on the basis that he was not given his *Miranda* warnings or, if he had been given the warnings, he had not knowingly, intelligently, and voluntarily waived his rights. Appellant argued the police used coercive tactics which negated the voluntariness of his statements, as the police had refused appellant's request for his mother to be present during the interview and had "threatened" him into talking by telling him that if he was not 100 percent honest with them, he would be going to juvenile detention until he was 21 years old.

{¶ 13} Appellant's second motion to suppress sought to exclude any evidence

obtained from the search of his home "on the grounds that said evidence is the fruit of an unconstitutional search and seizure." Appellant argued probable cause for the issuance of the search warrant did not exist as the affidavit in support of the search warrant was stale and unreliable since the information came from an "unidentified and unverified complainant" and a confidential informant "who has unknown credibility."

{¶ 14} A hearing on appellant's motions was scheduled for October 30, 2017. At this time appellant indicated that he was unwilling to stipulate to the contents of the search warrant and was seeking a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978), to challenge the "misleading statements" Detective Scott set forth in his affidavit in support of the search warrant. Because appellant's written motion to suppress evidence did not indicate an intent to challenge anything other than the four corners of the search warrant, the juvenile court determined the hearing would proceed only on appellant's motion to suppress his statements. However, the court gave appellant additional time to submit a supplemental motion to suppress, so that appellant could support his allegation that Scott made "misleading statements" with an offer of proof and could set forth an argument in favor of a *Franks* hearing.

{¶ 15} At the October 30, 2017 hearing, the state called Detective Schweitzer as its sole witness. Schweitzer testified he and Scott interviewed all individuals found in appellant's home on the evening the search warrant was executed. *Miranda* warnings were recorded at the start of the interviews for everyone except appellant. However, although unrecorded, Schweitzer explained that *Miranda* warnings had been given to appellant prior to appellant being interviewed. Schweitzer testified that when appellant waived his rights and spoke with law enforcement, appellant did not appear to Schweitzer to be under the influence of narcotics or alcohol and appellant expressly stated he was not under the influence.

{¶ 16} Schweitzer denied that any threats or promises were made to coerce appellant

- 5 -

into speaking with him. Schweitzer explained that in response to a question from appellant about whether or not appellant would be able to go home that evening, Schweitzer advised appellant that appellant needed to be 100 percent honest when answering questions, and if he was not honest, then appellant would go to the Juvenile Detention Center (JDC), "probably" until he was 21 years old. Schweitzer denied that this was a misleading or threatening statement, explaining that with the seriousness of appellant's conduct and the potential charges that could have been levied against him, appellant did face detention in JDC until he was 21 years old. Finally, Schweitzer denied that appellant asked for his mother to be present during the interview, noting that appellant had merely asked at the start of the interview whether the detective was "allowed" to question him without his mother or a guardian present since he was a minor.

{¶ 17} In addition to Schweitzer's testimony, the state introduced recordings of the two interviews Schweitzer conducted with appellant, as well as a copy of the search warrant and affidavit in support of the search warrant. Defense counsel then called appellant's father as a witness. Appellant's father testified that prior to May 19, 2017, appellant had no contact with the police and had never been interviewed by law enforcement.

{¶ 18} The juvenile court took the matter under advisement. On November 17, 2017, the court denied appellant's motion to suppress his statements, finding that *Miranda* warnings had been given to appellant and that after being "fully advised of his privilege against self-incrimination and right to counsel * * * [appellant] made an effective waiver thereof." The court further found that appellant's statements were voluntary as there was no evidence of police coercion, appellant had not requested to have his mother present for the police interviews, and appellant's mother's presence was not required for the interviews.

{¶ 19} On November 15, 2017, appellant filed his supplemental motion to suppress evidence and a request for a *Franks* hearing. Appellant argued Scott misled the court when

relating the events that occurred on April 1, 2017, May 16, 2017, and May 19, 2017, as Scott either "inappropriately elaborated information that he had no independent knowledge of or obtained only hearsay statements." In support of his arguments, appellant attached several exhibits, including the search warrant and Scott's affidavit for the warrant; an April 1, 2017 incident report from the Springboro Police Department regarding the traffic stop of the grey Nissan; the Springboro Police Department's November 8, 2017 response to defense counsel's public records request regarding an interview and follow up of the April 1, 2017 traffic stop; a May 16, 2017 incident recall log from the Springboro Police Department detailing the complainant's report of drug activity at appellant's residence; a May 16, 2017 incident report from the Springboro Police Department regarding the traffic stop of Hirt and A.M.; and an affidavit of appellant's grandmother detailing appellant's height and weight.

{¶ 20} After reviewing appellant's supplemental motion and the attachments thereto, the juvenile court found that appellant "failed to make a substantial preliminary showing that a false statement was knowingly and intentionally made by the Affiant [Scott] or a statement was made by the Affiant with reckless disregard for the truth." The court therefore denied appellant's request for a *Franks* hearing. The court determined that appellant's motion to suppress evidence would be "confined to the four corners of the affidavit only." Following a hearing held on November 17, 2017, the juvenile court denied the motion to suppress evidence. The court found that the information in the affidavit was not stale and that "there [was] a prima facie showing of criminal activity and a sound basis upon which to conclude it [was] more likely than not that criminal activity was occurring." Finally, the court determined that "even if [it] were to assume the contents of the warrant were legally deficient, the search * * * [was] still valid under the good faith exception."

{¶ 21} Following the denial of his motion to suppress his statements, his motion to suppress evidence, and his request for a *Franks* hearing, appellant entered a no contest plea

to the charges set forth in the complaint. The juvenile court accepted appellant's plea, adjudicated appellant a delinquent child, and sentenced appellant to a minimum six-month commitment to the Department of Youth Services, with the commitment suspended on the condition that appellant successfully complete a full program at the Mary Haven Youth Center followed by probation. Appellant was also ordered to pay court costs and a fine and to serve 45 days in JDC, with credit for 15 days already served.

{¶ 22} Appellant timely appealed, raising three assignments of error for review.

{¶ 23} Assignment of Error No. 1:

{¶ 24} THE TRIAL COURT ERRED BY DENYING [APPELLANT'S] MOTION TO SUPPRESS (STATEMENTS).

{¶ 25} In his first assignment of error, appellant argues the juvenile court erred when it denied his motion to suppress his statements. Appellant challenges the juvenile court's finding that *Miranda* warnings were provided to him, noting that the warnings were not in written form and were not recorded even though *Miranda* warnings for all the other individuals the officers spoke with on May 19, 2017 had been recorded. Appellant further argues that even if *Miranda* warnings were given, the juvenile court erred in finding he knowingly, intelligently, and voluntarily waived his rights given his age and lack of any prior criminal experience, the officers' refusal to let him speak with his mother, and the officers' threats of juvenile detention.

{¶ 26} Our review of a juvenile court's denial of a motion to suppress presents a mixed question of law and fact. *In re J.S.*, 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, ¶ 10. Acting as the trier of fact, the juvenile court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the juvenile court's findings of fact if they are supported by competent, credible evidence. *State v. C.J.*, 12th Dist. Warren

No. CA2017-06-082, 2018-Ohio-1258, ¶ 25, *citing In re J.B.*, 12th Dist. Butler No. CA2004-09-226, 2005-Ohio-7029, ¶ 52. However, an appellate court reviews de novo whether the juvenile court has applied the appropriate legal standard. *Id.*

{¶ 27} "A suspect in police custody 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6, quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602 (1966). There is no dispute that appellant was subject to custodial interrogations after being placed in handcuffs, escorted from his home, put in an unmarked police vehicle, and questioned by Detectives Scott and Schweitzer on the evening of May 19, 2017. Appellant does dispute, however, whether *Miranda* warnings were "properly given" to him by law enforcement as the *Miranda* warnings were not recorded or provided to him in writing.

{¶ 28} The police are neither required to provide a written copy of *Miranda* rights to a suspect or obtain a written waiver of rights from a suspect. *State v. Fowler*, 5th Dist. Tuscarawas No. 2015 AP 0054, 2016-Ohio-1209, ¶ 15. "'[A] *Miranda* waiver need not be expressly made in order to be valid.'" *Lather* at ¶ 11, quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755 (1979). One may waive or relinquish a known right if "relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at ¶ 7, citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986). Further, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

{¶ 29} "[A] court may infer from the totality of the circumstances that a defendant voluntarily, knowingly, and intelligently waived his rights." *Id.* at ¶ 9, citing *State v. Clark*, 38

Ohio St.3d 252, 261 (1988). The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* at ¶ 9, citing *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 25. *See also In re Watson*, 47 Ohio St.3d 86 (1989), paragraph one of the syllabus (applying the totality of the circumstances test to juvenile adjudications). "When the suspect is a juvenile, the totality of the circumstances [also] includes 'the juvenile's age, experience, education, background, and intelligence' as well as his 'capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'" *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, ¶ 24, quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560 (1979). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Burbine*, 475 U.S. at 412, quoting *Fare* at 725; *Lather*, 2006-Ohio-4477 at ¶ 7.

{¶ 30} Furthermore, while the issue of whether one voluntarily waived his *Miranda* rights is separate from the issue of whether one's confession was voluntary, "the same test is used to determine both, *i.e.*, whether the action was voluntary under the totality of the circumstances." (Emphasis sic.) *State v. Treesh*, 90 Ohio St.3d 460, 472 (2001), quoting *Clark* at 261. "'[P]olice overreaching' is a prerequisite to a finding of involuntariness." *Clark* at 261, citing *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515 (1986). Absent evidence of the use of inherently coercive police tactics (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep), a court need not access the totality of the circumstances to determine whether a defendant's statements were voluntary. *Treesh* at 472.

{¶ 31} After reviewing the record, we find no error in the juvenile court's determination that appellant was advised of his *Miranda* rights, that he knowingly, intelligently, and

voluntarily waived his rights, and that his statements to Detectives Scott and Schweitzer were voluntary and not the result of coercive police tactics. At the October 30, 2017 hearing, Schweitzer testified that appellant had been advised of his *Miranda* rights prior to being interrogated by law enforcement. Schweitzer also explained why appellant's *Miranda* warnings were not recorded, stating that his initial contact with appellant was different than his initial contact with the rest of the individuals found in appellant's home. Unlike appellant's mother, sister, and friends, who Schweitzer first encountered when they were interviewed in his vehicle, Schweitzer's first contact with appellant occurred on appellant's front lawn, after appellant had been escorted out of the basement. At this time, Schweitzer advised appellant of his *Miranda* warnings before asking appellant to aid officers in the recovery of drugs located in the home. Schweitzer specifically testified that

> [a]s soon as I walked up to him I introduced myself and I introduced Detective Scott, I verbally advised him that you have the right to remain silent and anything you say can and will be used against you in a court of law. You have the right to have an attorney present with you while you're being questioned. If you can't afford an attorney, one will be appointed for you. You have the right to not answer any questions at this time and you have a right to stop answering questions at any time during our conversation and consult with an attorney. [Appellant] advised he understood his rights and he advised he was going to cooperate and * * * he was going to show us where the drugs were located in his residence.

{¶ 32} The recordings of appellant's subsequent interviews with Detectives Schweitzer and Scott also indicate appellant had been advised of his *Miranda* rights and that he understood his rights. During the first interview that took place in Schweitzer's unmarked police vehicle, the following discussion was held:

> Detective Schweitzer: Alright, so you've already been advised of your rights, right? Yes or no?
>
> Appellant: Yes
>
> Detective Schweitzer: And you understand your rights?

Appellant: Yes.

Similarly, at the start of the second interview, Schweitzer asked appellant if he "still understood [his] rights" and appellant responded, "Yeah."

{¶ 33} Therefore, given Schweitzer's testimony and appellant's recorded acknowledgements that he had been advised of and understood his rights, we find no error in the juvenile court's determination that appellant had been provided with *Miranda* warnings.

{¶ 34} We further find that the juvenile court did not err in concluding that appellant knowingly, intelligently, and voluntarily waived his rights and that his statements to Detectives Scott and Schweitzer were voluntary and not the result of coercive police tactics. Although appellant was only 15 years old at the time of the interviews and did not have any prior experience with law enforcement or the criminal justice system, the record demonstrates appellant understood the rights he waived by speaking with law enforcement. *See Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S.Ct. 2250 (2010) ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent"). Appellant was alert and oriented to time and place, expressly stated he understood his rights and was not under the influence of drugs or alcohol, did not appear to have a diminished capacity, asked the detectives questions that showed he was of sound mind, and responded appropriately to questions asked by the detectives.

{¶ 35} The fact that appellant's mother was not present during appellant's police interrogations did not render his waiver of rights and his subsequent confession involuntary. "A juvenile's access to advice from a parent * * * plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary." *Barker*, 2016-Ohio-2708 at ¶ 24. However, "a juvenile's confession is not rendered involuntary where the juvenile does not have either a parent or attorney present." *In re M.D.*, 12th Dist. Madison No. CA2003-12-038, 2004-Ohio-

5904, ¶ 27, citing *In re Watson*, 47 Ohio St.3d at 89. "The presence or absence of a [parent or] legal guardian is but one factor to consider in determining whether, under the totality of the circumstances, there is a valid waiver of the rights to remain silent and to have the assistance of counsel." *State v. Bates*, 8th Dist. Cuyahoga No. 92323, 2009-Ohio-5819, ¶ 10. *See also State v. Pablo*, 10th Dist. Franklin No. 16AP-888, 2017-Ohio-8834, ¶ 15.

{¶ 36} Here, appellant questioned Schweitzer and Scott about whether they were "allowed" to interview him without his mother being present. After being advised that his mother's presence was not required, appellant did not seek to stop the interview or specifically request his mother be present. Appellant contends that the manner in which he was advised that his mother's presence was not required was aggressive, and he states his belief that Schweitzer should have "followed up with [him] to see if he wanted to consult a parent" before continuing the interrogation. Having reviewed the record, we agree with the juvenile court's determination that "[t]here was nothing aggressive about Detective Schweitzer's tone." Schweitzer's response was neither coercive in nature nor untruthful. As "parental presence is not constitutionally mandated," Schweitzer was not required to ensure appellant's mother's presence during his questioning of appellant. *State v. Bobo*, 65 Ohio App.3d 685, 690 (8th Dist.1989). Therefore, having considered the totality of the circumstances, we find that appellant's mother's absence did not affect the voluntariness of his waiver of rights or the voluntariness of his confession to law enforcement.

{¶ 37} Appellant also argues that he was coerced into waiving his rights and giving a confession due to improper police conduct. While conceding that he was not denied of food or sleep or subjected to lengthy interrogations, appellant nonetheless contends that he was coerced into speaking with law enforcement when he was "threatened" with juvenile detention until he was 21 years old.

{¶ 38} The record reveals that during appellant's first interview in the unmarked police

vehicle, he asks Schweitzer whether he will be able to go home that evening. In response appellant is advised by Schweitzer that he needed to be 100 percent honest when answering questions, and if he was not honest, he would go to JDC "probably" until he was 21 years old. The juvenile court rejected appellant's contention that this was a coercive threat affecting the voluntariness of his waiver or confession, and we agree with the juvenile court's determination. The statement was not intended as a threat and was not misleading, as it emphasized the seriousness of appellant's conduct and the potential punishment associated with trafficking and possession of drugs. As the juvenile court noted,

> [a] juvenile who is charged with a felony as serious as drug trafficking could be subject to the Department of Youth Services (DYS) until he is 21 years of age. Detective Schweitzer did not use deceptive and exaggerative practices * * * to secure [appellant's] confession during the interrogation, as he believed the [appellant] could very well serve a lengthy detention sentence given the seriousness of the crimes committed. Detective Schweitzer did not create an impression that the [appellant] could be facing a penalty or term of imprisonment that was outside the possible consequences this Court could impose.

{¶ 39} Accordingly, having reviewed the record in the present case, we find that the juvenile court did not err in denying appellant's motion to suppress his statements. The evidence presented demonstrated appellant was advised of his *Miranda* rights, he made a valid waiver of his rights, and his statement to law enforcement was voluntary and not the result of coercive police tactics. Appellant's first assignment of error is, therefore, overruled.

{¶ 40} Assignment of Error No. 2:

{¶ 41} THE COURT BELOW ERRED BY FINDING PROBABLE CAUSE FOR THE SEARCH WARRANT AS THE INFORMATION PROVIDED IN THE AFFIDAVIT WAS STALE.

{¶ 42} In his second assignment of error, appellant argues the juvenile court erred when it denied his motion to suppress evidence as the search warrant was issued without

probable cause. Appellant contends the search warrant affidavit does not demonstrate probable cause that contraband would be found at his residence and the affidavit "does not present timely information as too much time had passed with no further credible evidence between April 1, 2017 and May 19, 2017."

{¶ 43} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Accordingly, "a judge may issue a search warrant only upon a finding of probable cause in an affidavit or affidavits presented to the judge." *State v. Risner*, 12th Dist. Preble No. CA2017-06-007, 2018-Ohio-1569, ¶ 16, citing Crim.R. 41(C). The affidavit must "name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Crim.R. 41(C)(1). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim.R. 41(C)(2); *Risner* at ¶ 16.

{¶ 44} In determining whether probable cause exists to support the issuance of a warrant, courts employ a "totality-of-the-circumstances test." *State v. Thompson*, 12th Dist. Butler No. CA2013-08-158, 2014-Ohio-3380, ¶ 12; *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 13. Under this standard, the judge issuing the warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus,

quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317 (1983). *See also State v. J.A.C.*, 12th Dist. Warren Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, ¶ 18.

{¶ 45} "When reviewing the decision to issue a warrant, neither a trial court nor an appellate court will conduct a de novo determination as to whether the affidavit provided sufficient probable cause." *Risner*, 2018-Ohio-1569 at ¶ 18, citing *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 21. Rather, the duty of the reviewing court is limited to ensuring the judge issuing the warrant had a substantial basis for concluding that probable cause existed based on the four corners of the affidavit filed in support of the warrant. *Id.*; *State v. Adkins*, 12th Dist. Butler Nos. CA2014-02-036 and CA2014-06-141, 2015-Ohio-1698, ¶ 55, citing *Jones* at ¶ 13. "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the [issuing judge's or] magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus.

{¶ 46} "With regard to staleness, it is well-established that an affidavit for a search warrant must present timely information." *State v. Young*, 12th Dist. Clermont No. CA2005-08-074, 2006-Ohio-1784, ¶ 23. The proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, ¶ 11. However, "[n]o arbitrary time limit dictates when information becomes stale." *Id.* at ¶ 12, citing *State v. Hollis*, 98 Ohio App.3d 549, 554 (11th Dist.1994). "The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched." *State v. Moore*, 12th Dist. Butler No. CA2005-08-366, 2006-Ohio-4556, ¶ 15. A determination of the likelihood that the evidence sought is still in place requires consideration of many variables, including the character of the crime, the criminal, the items sought to be seized, and "whether

- 16 -

the information in the affidavit relates to a single isolated incident or a protracted ongoing criminal activity." *Id.*, citing *Prater* at ¶ 13.

{¶ 47} Having reviewed the information set forth in Detective Scott's affidavit, we conclude that the affidavit set forth sufficient information establishing probable cause to believe that controlled substances and items used to store, protect, or sell said substances would be found in appellant's home on May 19, 2017. Although 48 days had passed between the initial incident described in Scott's affidavit and the final incident described therein, the information set forth in the affidavit was not stale.

{¶ 48} Detective Scott's affidavit described drug activity at appellant's home on April 1, 2017. On this date, two Springboro police officers observed a grey Nissan travel to appellant's residence and leave one minute later – behavior consistent with drug trafficking. A traffic stop of the grey Nissan resulted in the discovery of ten hits of suspected LSD – drugs that the occupant of the Nissan admitted to buying from appellant. The occupant of the Nissan then advised Scott that appellant sold both LSD and marijuana to multiple juveniles throughout the community and that appellant often hosted parties at his residence where juveniles would use LSD, marijuana, and alcohol in the basement. Scott's own investigative efforts resulted in the discovery of several Snapchat photographs uploaded by appellant which depicted appellant taking Xanax and LSD.

{¶ 49} Scott's affidavit also described a complaint of drug trafficking at appellant's home on May 16, 2017 by a complainant who observed approximately 12 cars pull into appellant's driveway within a two-hour time period. A "tall lanky kid" then exited the residence and made hand-to-hand transactions before the cars would drive away and the kid reentered the residence. From his own surveillance on May 16, 2017, Scott observed two males exit appellant's residence carrying backpacks. A traffic stop of the vehicle they drove away in resulted in the discovery of drugs found on both males. Though the driver stated he

had purchased marijuana from his passenger, the driver admitted he had just left a party hosted by appellant.

{¶ 50} Finally, on May 19, 2017, the date Scott sought and was granted a warrant, Scott had been informed by a confidential informant that appellant had posted a status on Snapchat that there would be a party that day. Scott averred that "through his training and experience," he knew that juveniles hosted parties in the "late evening hours after 8 p.m."

{¶ 51} Therefore, when viewing the affidavit as a whole, we find the affidavit sets forth timely information that establishes probable cause to believe that controlled substances, namely LSD, and items used to store, protect, or sell said substances would be found in appellant's home on May 19, 2017. The information obtained by law enforcement was that appellant sold LSD and marijuana, that he "often host[ed] parties at his home, that LSD, marijuana, and alcohol are used at the parties, and that appellant was hosting a party on the evening of May 19, 2017. The fact that some of the information set forth in the affidavit was based on hearsay information is irrelevant, as probable cause may be based on hearsay as long as the affidavit provides a "substantial basis for believing that the source is credible and that there is a factual basis for the information furnished." *Adkins*, 2015-Ohio-1698 at ¶ 59, citing Crim.R. 41(C).

{¶ 52} Contrary to appellant's arguments, there was a substantial basis for believing the information obtained from the confidential informants. The information Scott received from informants about drug activity at appellant's residence was consistent with and corroborated by law enforcement's own investigative efforts. The traffic stops of the individuals leaving appellant's home on April 1, 2017 and May 16, 2017 supported information relating to illegal drug activity occurring at the residence. Further, Scott's discovery of Snapchat photographs that depicted appellant in possession and using Xanax and LSD also supported information elicited from the informants.

{¶ 53} Appellant argues the Snapchat photographs of appellant using Xanax and LSD are of minimal value as the affidavit "is silent as to the location of where the photographs were taken or when the photographs were taken." He also argues that the complainant's phone call identifying a "tall lanky kid" as the individual conducting the hand-to-hand transactions is of minimal value because "nowhere [does] the affidavit identify or connect the 'tall lanky kid' as [appellant] or a resident of the house to be searched." Appellant's attempt to discredit the information set forth in the affidavit by separating the incidents into isolated events is ineffective. "Probable cause is the sum total of layers of information * * *. We weigh not individual layers but the 'laminated' total." *Young*, 2006-Ohio-1784 at ¶ 26. Here, the Snapchat photographs and the complainant's telephone call provide relevant information, as they described events consistent with appellant engaging in illegal drug activity and illegal drug activity occurring at his residence. Regardless of whether the complainant specifically identified appellant as the "tall lanky kid," the complainant specifically described drug activity occurring on appellant's driveway after the "tall lanky kid" exited appellant's residence. Moreover, the Snapchat photographs Scott found directly tied appellant to LSD, the drug the occupant of the grey Nissan reported appellant sold to him and others in the community.

{¶ 54} Therefore, viewing all the information set forth in the affidavit as a whole, we conclude that there was sufficient probable cause for the issuance of the search warrant. The juvenile court did not err in denying appellant's motion to dismiss evidence. Appellant's second assignment of error is overruled.

{¶ 55} Assignment of Error No. 3:

{¶ 56} [APPELLANT] SHOULD HAVE BEEN AFFORDED A HEARING TO CHALLENGE THE VALIDITY OF THE WARRANT AFFIDAVIT PURSUANT TO *FRANKS V. DELAWARE*, 438 U.S. 154, 155, 98 S.CT. 2674.

{¶ 57} In his third assignment of error, appellant argues the juvenile court erred in

denying his request for a *Franks* hearing as he had presented evidence of several misleading statements contained in Detective Scott's affidavit in support of the search warrant. Appellant contends these misleading statements were either made deliberately or with reckless disregard for the truth.

{¶ 58} In *Franks*, the United States Supreme Court held that if a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-156. The defendant must therefore meet a two-part test to be entitled to a *Franks* hearing. "[T]he defendant (1) must make a 'substantial' preliminary showing that the affiant made a false statement either knowingly or with reckless disregard for the truth; and, additionally, (2) prove the allegedly false statement was necessary to the finding of probable cause." *State v. Collins*, 12th Dist. Preble No. CA2016-09-009, 2017-Ohio-4371, ¶ 18, citing *State v. Sekse*, 12th Dist. Preble No. CA2015-07-015, 2016-Ohio-2779, ¶ 9.

{¶ 59} Reckless disregard means that "the affiant had serious doubts of an allegation's truth." *State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219, ¶ 22. "Omissions are considered false statements if they are designed to mislead, or are made in reckless disregard of whether they would mislead the magistrate." *Seske* at ¶ 10, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 31. "Except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *State v. Baylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15.

{¶ 60} This court reviews a juvenile court's decision to deny a request for a *Franks*

- 20 -

hearing under a clear error standard. *Collins* at ¶ 19, citing *Seske* at ¶ 12. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *State v. Bryant*, 5th Dist. Holmes Nos. 10CA019 and 10CA020, 2011-Ohio-3353, ¶ 24. "When reviewing a trial court's decision to deny a request for a *Franks* hearing, this court gives deference to the trial court's resolution of factual questions and the determination of witness credibility for it is the trial court, as the trier of fact, that is in the best position to resolve these matters." *Collins* at ¶ 19.

{¶ 61} Appellant alleges he made a substantial preliminary showing that Scott either deliberately or with reckless disregard made six misleading statements in his affidavit in support of the warrant, and that these misleading statements were necessary to the finding of probable cause. However, we find that the record does not show that appellant was entitled to a hearing as either the record supports Scott's representations, or any falsity in the statement would not have impacted the overall probable cause determination.

**Alleged Misleading Statement #1:**
**One-Minute Stop by Grey Nissan on April 1, 2017**

{¶ 62} Appellant contends the April 1, 2017 incident report from the Springboro Police Department regarding the traffic stop of the grey Nissan demonstrates that Scott misled the judge that issued the search warrant about the Nissan's stop at appellant's home. In his affidavit, Scott stated that Springboro officers had observed "a grey Nissan travel to [appellant's residence] and after approximately one minute later the Nissan left [the residence] traveling towards Crocket Dr. (Through training and experience your Affiant believes that this behavior is consistent with drug trafficking)." However, the incident report states that one officer observed the vehicle heading west on the road appellant resides on and one minute later another officer observed the Nissan leaving the road appellant lives on

to make a left on Crockett Drive. Appellant argues that because the incident report does not specifically state the officers observed the Nissan stop at appellant's residence, Scott misled the judge.

{¶ 63} The juvenile court considered this alleged discrepancy, and after reviewing the April 1, 2017 incident report, found that Scott's statement in the affidavit in support was a "summary of the events that occurred. One officer sees the grey Nissan pull onto [appellant's] street and a minute later a second officer sees the Nissan pulling out of Defendant's street. * * * It was the driver of the car who later told the patrolman that he stopped at [appellant's] home and the Affiant [Scott] put two and two together."

{¶ 64} We agree with the juvenile court that the statement was not designed to mislead the judge issuing the warrant. Scott attempted to summarize relevant details about the Springboro officers' observations and experiences on April 1, 2017, and his narrative description that the Nissan traveled to appellant's home and then left approximately one minute later was an accurate representation of the events set forth by the officers in their incident report. As such, Scott's statement was neither false nor misleading.

{¶ 65} However, Scott suggests that the one-minute stop, from his "training and experience," was "consistent with drug trafficking." In making this statement, Scott suggests the Nissan's one-minute stop at appellant's residence was for the purpose of drug trafficking, when the incident report states that the driver of the grey Nissan reported he went to appellant's home to pick up an individual who had been spending time at appellant's home. This individual, who is referred to as "the defendant" in the affidavit, admitted he had been at appellant's home. It was this individual whom officers found with ten hits of LSD in his possession. Scott's omission of these details is, therefore, misleading as the omission – in combination with Scott's statement that a one-minute stop "is consistent with drug trafficking" – created the impression that the occupant of the grey Nissan was already in the vehicle at

the time of the vehicle's stop at appellant's house, and that the stop was for the purchase of drugs.

{¶ 66} However, although misleading, appellant cannot demonstrate the omission of information – and the inferences flowing from the omission – were necessary to the finding of probable cause. All of the other information contained in the affidavit was enough to establish probable cause. Whether or not the occupant of the grey Nissan purchased drugs from appellant during the one-minute stop does not impact the information obtained during the traffic stop of the grey Nissan or the information the occupant gave to Scott during the second week of April. The fact that an occupant of a vehicle that had stopped at appellant's home was found in possession of ten hits of LSD, admitted to buying the LSD from appellant, informed Scott that appellant sold LSD and marijuana to multiple juveniles in the community, and provided information about parties held at appellant's home where alcohol, marijuana, and LSD were used in the home's basement were all relevant facts derived from the April 1, 2017 traffic stop and such facts provided support for the finding of probable cause.[2] As such,

---

2. **{¶ a}** On appeal, appellant contends that he "was not offered an opportunity to observe any audio or video interviews to determine what the [occupant of the grey Nissan] told the Springboro Police" and a November 8, 2017 records request response from the Springboro Police Department indicates all records of any such interviews were purged according to the department's retentions schedule. He further states that he "was denied any opportunity" to examine the officers involved in the April 1, 2017 traffic stop "to determine the truthfulness of the information provided to Detective Antwon Scott as he prepared his affidavit for the search warrant." Appellant suggests that if a hearing were granted, he might be able to further attack the veracity of Scott's statements by cross-examining the Springboro officers involved in the stop.

**{¶ b}** As the United States Supreme Court has recognized, to be entitled to a *Franks* hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Appellant's mere belief that he *might* be able to find out information to contradict the assertions set forth in Scott's affidavit does not meet the standard set out in *Franks*. Appellant speculates that a *Franks* hearing might provide valuable information to his argument that Scott misled the court and that the search warrant was issued without probable cause. However, the standard set forth in *Franks* requires much more than speculation; it requires a substantial preliminary showing that Scott made a false statement knowingly, or with reckless disregard for the truth before a hearing must be held. *Id.* at 155-156. The materials attached to appellant's request for a *Franks* hearing fail to meet this burden.

**{¶ c}** Furthermore, with respect to appellant's claim that he was denied the opportunity to observe any audio or video recordings of law enforcement's interviews with the occupant of the grey Nissan, we note that appellant attempted to compel discovery of the recordings from the state. Appellant's motion to compel was filed on November 14, 2017, the day before he filed his supplemental motion to suppress evidence and request for a *Franks* hearing. The juvenile court denied the motion, holding that appellant "had more than enough time in

- 23 -

appellant cannot prove the misleading omission was necessary to the finding of probable cause.

**Alleged Misleading Statement #2:**
**Reference to the Occupant of the Grey Nissan as "the Defendant"**

{¶ 67} Appellant contends Scott misled the judge when Scott referred to the occupant of the grey Nissan as "the defendant," as such reference "indicated he has some level of credibility and willingness to cooperate with Detective Scott." Appellant contends that because the occupant of the grey Nissan had not been charged with any crime related to the events of April 1, 2017, it was misleading to refer to him as a defendant. We disagree. Scott's use of the phrase "the defendant" merely served as a designation for the occupant of the grey Nissan who was found in possession of the drugs. Regardless of whether the individual was referred to as "the defendant," "the occupant," or another designation, the fact remains that this individual was found in possession of ten hits of LSD, admitted to buying the drugs from appellant, and provided information about appellant's trafficking activities. While Scott could have chosen another name or phrase to refer to this individual, his use of the phrase "the defendant" in no way indicated the individual had been charged with a crime, assigned special significance to the individuals' credibility, or served to mislead the court. As such, there is no indication that Scott's reference to "the defendant" was false or misleading.

**Alleged Misleading Statement #3:**
**Snapchat Photographs of Appellant**

{¶ 68} Appellant argues Scott's reference to the Snapchat photographs of appellant taking Xanax and LSD was misleading as "[t]he photos are not dated and in no way indicate drug trafficking." We disagree. First, there is no indication that Scott misrepresented the

---

which to secure the evidence requested in order to further his *Franks*-type hearing. His request to compel the State to produce to him videos of the stops this late in the game is a product of his own doing. The Court finds the Motion to Compel **NOT WELL TAKEN** and is hereby **Denied**." (Emphasis sic). Appellant has not challenged the court's denial of his motion to compel on appeal.

- 24 -

activities appellant was engaged in in the photographs. Second, the photographs show appellant in possession of drugs, and at least one of the drugs depicted in the photographs is LSD – the same drug appellant was accused of trafficking in. The photographs were therefore relevant, and Scott's statement in the affidavit regarding the photographs was neither false nor misleading.

**Alleged Misleading Statement #4:**
**Misrepresenting Statement of Complainant: "Hand-to-Hand Transactions"**

{¶ 69} Appellant next argues that Scott misrepresented the complainant's May 16, 2017 complaint about drug activity at appellant's house. Appellant contends that Scott "took great liberties in exaggerating in his affidavit that 'hand-to-hand' transactions" had been made at appellant's house, when the Springboro Police Department's phone call incident recall log makes no express mention of "hand-to-hand transactions."

{¶ 70} The phone call incident recall log submitted by appellant states that the complainant "believes neighbor's [sic] are selling drugs. Cars coming and going. * * * She advised in the past 2 hrs approximately a doxen [sic] cars have came [sic] to the residence and pulled into the driveway. A tall linky [sic] kid comes to the car and then goes back to the house. The car drives off. Once the kid got into the car."

{¶ 71} After viewing the incident recall log, the juvenile court found that the log was "enough, in and of itself, to substantiate that portion of the affidavit for probable cause to be found." We agree. Though the phrase "hand-to-hand transactions" does not appear in the incident recall log, the use of the phrase was not misleading as it summarizes Scott's understanding of the events described by complainant. Moreover, use of the phrase "hand-to-hand transactions" in the affidavit was not necessary to the finding of probable cause. Consideration of the events described by the complainant – with no regard given to the phrase "hand-to-hand transactions" – as well as the additional information set forth in the

affidavit provide sufficient support for the finding of probable cause. As such, appellant cannot prove that use of the phrase "hand-to-hand transactions" was false or misleading, or that it was necessary to the finding of probable cause.

### Alleged Misleading Statement #5:
### Reference to a "Tall Lanky Kid"

{¶ 72} Appellant contends Scott misled the judge issuing the search warrant by insinuating in the affidavit that appellant was the "tall lanky kid" described by the complainant when Scott failed to undertake steps to confirm the identity of the "tall lanky kid." Appellant contends that the complainant "would not be able to identify [him] and * * * would not describe [him] as a 'tall lanky kid.'" To support the notion that he was not the individual the complainant observed on May 16, 2017 and could not be described as a "tall lanky kid," appellant submitted the affidavit of his grandmother. Appellant's grandmother states that appellant is 5' 11" and weighs 241 pounds and she "would not describe [appellant] as tall and lanky but would rather describe [appellant] as average height and husky."

{¶ 73} We find that Scott's use of the phrase "tall lanky kid" in the affidavit was not misleading, as that phrase was used by the complainant and appears in the incident recall log. Scott did not identify appellant as the "tall lanky kid" in the affidavit, but rather merely set forth the complainant's description of the individual seen exiting and entering appellant's residence after approaching numerous cars in the residence's driveway. Scott's statement was, therefore, neither false nor misleading.

### Alleged Misleading Statement #6:
### Informant's Snapchat Party Notification

{¶ 74} Finally, appellant argues Scott's statement in the affidavit in support of the search warrant that a confidential informant had informed him that appellant posted a status on Snapchat that there would be a party on May 19, 2017 was misleading. Appellant contends the statement was misleading as Scott did not provide any information as to the

reliability of this informant and Scott had no first-hand knowledge about the Snapchat post. However, appellant has not introduced any evidence indicating Scott falsified his meeting with the informant or the contents of appellant's Snapchat post. Appellant, therefore, has not demonstrated a false or misleading statement was made by Scott.

**Conclusion**

{¶ 75} Accordingly, having reviewed the record, we find that the juvenile court properly denied appellant's request for a *Franks* hearing. Appellant failed to make a substantial preliminary showing that false statements knowingly and intentionally, or with reckless disregard for the truth, were included by Scott in the warrant affidavit or that such statements were necessary to the finding of probable cause. Appellant's third assignment of error is, therefore, overruled.

{¶ 76} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.