[Cite as *In re D.Y.*, 2020-Ohio-3758.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

IN THE MATTER OF:

D.Y.,

DELINQUENT CHILD.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MO 0021**

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division of Monroe County, Ohio
Case No. 5729

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Rhonda Santha*, 6401 State Route 534, West Farmington, Ohio 44491 for Appellant and

*Atty. James Peters*, Prosecutor, *Atty. Jamie Riley Pointer*, Assistant Prosecutor, 101 North Main Street, Room 15, Woodsfield, Ohio 43793, for Appellee.

**Dated: July 10, 2020**

---

**Robb, J.**

{¶1}    Juvenile-Appellant D.Y. appeals from the delinquency adjudication and disposition entered in the Monroe County Common Pleas Court, Juvenile Division. Appellant raises two suppression issues, arguing the juvenile court should have suppressed his confession because it was coerced by a threat of incarceration and his *Miranda* rights were not voluntarily, intelligently, and knowingly waived. These arguments are without merit. In any event, these suppression issues were not preserved for purposes of appeal due to Appellant's entry of an admission to the burglary allegation in the complaint. An admission by a juvenile waives alleged errors in denying a motion to suppress in the same manner that a guilty plea by an adult defendant waives suppression issues. For all of the following reasons, the juvenile court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2}    In July 2019, a probation officer and a detective learned that a cabin outside of Woodsfield, Ohio had been entered without the owner's permission and items had been damaged. They spoke to two teenagers who were present and one who was in the vicinity and then made contact with Appellant for an interview. Appellant was 13.5 years old. They went to his residence, but neither he nor his father was home. The officers found Appellant walking home after swimming with friends. As they did not wish to interview him in the presence of others and he was defiant about accompanying them to be interviewed, they handcuffed him and transported him to the county sheriff's office.

{¶3}    The interview was videotaped. The detective read a juvenile *Miranda* rights form to Appellant. The probation officer asked if he understood what was read to him, and Appellant said, "Yes, sir." The probation officer asked if there was anything he did not understand, and Appellant said, "No, sir." The probation officer also inquired whether he had any questions about what he heard, and Appellant replied, "No, sir." Appellant signed the form and then gave a statement about his involvement.

{¶4}    A juvenile delinquency complaint was filed against Appellant for burglary (a third-degree felony) and criminal damaging (a misdemeanor). Appellant's counsel filed a motion to suppress his confession, stating Appellant was not fully aware of his rights or

the consequences of waiving them. In orally supplementing the motion, counsel reviewed the totality of the circumstances, including the fact that the detective preceded the *Miranda* warning by saying, "your truthfulness will determine whether you sleep at home tonight or somewhere else." (Tr. 4). Counsel concluded that the *Miranda* waiver was not knowing or voluntary. (Tr. 5).

{¶5} At the suppression hearing, the state presented the testimony of the detective and the probation officer. The video of the interview was admitted as an exhibit for the juvenile court's viewing. In addition to testifying about the conversations evidenced in the video, the detective testified: the drive to the police station took three to five minutes; he removed the handcuffs when they arrived; he saw the probation officer attempt to call Appellant's father multiple times; Appellant was permitted to use the restroom; Appellant had no shirt on because he had been walking back from the pool; and the interview room was approximately seventy degrees with air conditioning in July. (Tr. 13-18).

{¶6} The probation officer testified about his frequent contact with Appellant as Appellant was on probation at the time (through this juvenile court). (Tr. 33-34). He disclosed that Appellant had four prior local cases with charges initiated upon police reports, and he had previous charges in Indiana, including possession of marijuana. (Tr. 35, 45). The probation officer said the child's father is a single parent and noted it was often difficult to contact the father at work; he tried to call him three of four times that afternoon. (Tr. 37-38, 42). The probation officer said Appellant had strong verbal skills and a better understanding than other children that he supervises. (Tr. 54). Appellant had been in this situation before, and the probation officer said he had similar conversations with Appellant in the past, which contributed to his belief that Appellant understood his *Miranda* rights. (Tr. 45-46, 51). He opined Appellant was more intelligent than some others realized. (Tr. 46).

{¶7} Appellant presented testimony from the assistant school psychologist at his school. She acknowledged he had strong verbal skills and would be considered average with regards to academic abilities, IQ composite score, and most testing categories. (Tr. 72, 77). He tested weak in processing speed and fluid reasoning (responding to novel situations). (Tr. 65-70). She mentioned an attention deficit and was concerned as to

Case No. 19 MO 0021

whether Appellant could process the significance of the information provided to him about the rights he was waiving.  (Tr. 70-71, 73).

{¶8}   On August 20, 2019, the juvenile court overruled the suppression motion. The court reviewed the totality of the circumstances, including Appellant's age, the lack of a parent during the interview, his strong verbal skills, his frequent contact with the probation officer, his repeated encounters with law enforcement in the past year, the probation officer's three questions about his understanding of the waiver of rights, the lack of physical deprivation or inducement, and the low intensity of the interview.  Upon viewing the video, the juvenile court observed that the total interview lasted only fourteen minutes with less than ten minutes of questioning (and additional time spent writing).

{¶9}   On August 30, 2019, Appellant entered an admission to the burglary charge. The state dismissed the criminal damaging charge and withdrew its probation revocation requests in two other cases.  In a September 3, 2019 order, the court imposed a suspended sentence of incarceration with an order to complete a program at a residential facility and to comply with probation and counseling.  The within appeal followed.

ADMISSION FAILS TO PRESERVE SUPPRESSION ISSUES

{¶10} Appellant raises only suppressions issues on appeal, setting forth arguments as to why the court should have suppressed his confession.  However, Appellant entered an admission, thereby admitting the allegations in the complaint instead of taking the case to trial.  *See* Juv.R. 29(C)-(D).  Before considering Appellant's suppression arguments, we must discuss the effect of the admission on the ability to appeal suppression issues.  In doing so, we first review how a guilty plea by an adult defendant waives the right to appeal the court's denial of a suppression motion.

{¶11} The Ohio Supreme Court has often stated that when a defendant voluntarily, knowingly, and intelligently entered a guilty plea with the assistance of counsel, the defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 55 (a capital case), quoting *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78, quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The *Obermiller* Court found that by pleading guilty, the defendant waived the right to raise

any alleged constitutional suppression issues and was thus prohibited from raising arguments on appeal pertaining to the denial of his motion to suppress. *Obermiller*, 147 Ohio St.3d 175 at ¶ 56 (noting the defendant did not challenge his guilty plea on appeal).

{¶12} A guilty plea is a "break in the chain of events" that previously occurred in the case. *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Therefore, where an appellant claimed the trial court erred by denying a motion to suppress involuntary and coerced statements to the police, the Supreme Court concluded his guilty plea waived the right to contest these issues on appeal. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 116-117.

{¶13} This is distinct from the effect of a no contest plea, which "does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." Crim.R. 12(I). "A valid guilty plea by a counseled defendant, however, generally waives the right to appeal all prior nonjurisdictional defects, including the denial of a motion to suppress." *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 15. This is a well-established principle.

{¶14} In a juvenile delinquency case, the court shall request the "party against whom allegations are being made in the complaint to admit or deny the allegations." Juv.R. 29 (C). "A failure or refusal to admit the allegations shall be deemed a denial, *except in cases where the court consents to entry of a plea of no contest.*" (Emphasis added). Juv.R. 29(C). This was added to the rule in 2001 after the General Assembly encouraged the Supreme Court to amend Rule 29(C) to permit no contest pleas with the consent of the court in order to be consistent with Crim.R. 11. *See* Staff Note to Juv.R. 29(C) (2001). There is thus the ability to enter a no contest plea in a juvenile case.

{¶15} Juv.R. 29 also provides that when the juvenile court accepts an admission, the court must personally address the juvenile and determine the juvenile: (1) is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; and (2) understands that "by entering an admission the

party is *waiving the right to challenge the witnesses and evidence against the party*, to remain silent, and to introduce evidence at the adjudicatory hearing." (Emphasis added). Juv.R. 29(D)(1).

**{¶16}** A juvenile's admission is analogous to an adult defendant's guilty plea in many ways. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 112 (a Juv.R. 29 admission is analogous to a Crim.R. 11 guilty plea, in the context of requiring the trial court to personally address the defendant on the record about the matters listed in the pertinent rule). The Twelfth District has therefore concluded that a juvenile's tender of an admission waives the juvenile court's ruling on an earlier suppression motion, just as an adult defendant's guilty plea waives a prior suppression ruling. *In re S.L.*, 12th Dist. Butler No. CA2005-05-112, 2006-Ohio-1895, ¶ 4 (refusing to address the merits of the appellate arguments on suppression where the juvenile entered an admission); *In re Panko*, 12th Dist. Brown No. CA2001-05-008, 2002-Ohio-2306, ¶ 16-17 (where the district first held that an admission by a juvenile waives right to challenge a ruling on a motion to suppress on appeal).

**{¶17}** Correspondingly, the Fourth District has concluded: "As in a criminal case when the defendant pleads guilty, a juvenile who enters a delinquency admission may not raise independent claims relating to the deprivation of constitutional rights that occurred before he entered the admission." *In re S.M.*, 4th Dist. Lawrence No. 09CA5, 2009-Ohio-3118, ¶ 10. *See also In re D.L.*, 4th Dist. Washington No. 09CA26, 2009-Ohio-5294, ¶ 17-18. The Third District has likewise observed: "a defendant in an adult criminal case who enters a plea of guilty waives the right to appeal all non-jurisdictional issues arising at prior stages of the proceedings. * * * We have found no authority, nor has the appellant directed us to any, to indicate that the identical principle would not apply to an admission duly entered in a juvenile delinquency case." *In re E.B.*, 3d Dist. Putnam No. 12-16-03, 2017-Ohio-1232, ¶ 23 (while refusing to address a temporary disposition).

**{¶18}** Finally, in explaining that "a guilty plea waives ineffective assistance of counsel claims for defects that occur prior to the guilty plea," this court has concluded that holdings such as this "equally apply to the juvenile system when a juvenile admits the charges." *In re C.L.P.*, 7th Dist. Mahoning No. 08 MA 58, 2010-Ohio-1004, ¶ 25

(distinguishing the situation and finding no waiver where there was a defect after the plea was entered, such as ineffective assistance of counsel at sentencing).

**{¶19}** Accordingly, the suppression issues raised in this appeal were not preserved for further review; rather, they were waived by Appellant's entry of a plea of admission to the allegations in the complaint regarding the offense of burglary. In any event, Appellant's arguments are without merit.

GENERAL LAW ON CONFESSIONS

**{¶20}** The Fifth Amendment to the United States Constitution grants the right to be free from self-incrimination, and the Sixth Amendment grants the right to counsel. To protect these rights, the police must warn the suspect before a custodial interrogation "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶21}** Where a suppression motion challenges a *Miranda* waiver, the state has the burden to show by a preponderance of the evidence that the suspect knowingly, intelligently, and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel before speaking to the police. *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 23, citing *Miranda*, 384 U.S. at 475. "A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact that the suspect eventually confessed." *Id.*

**{¶22}** "To determine whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights, courts examine the totality of the circumstances." *Barker*, 149 Ohio St.3d 1 at ¶ 24. When the suspect is a juvenile, the totality of the circumstances includes: age, experience, background, education, and intelligence; capacity to understand the rights and the warning; ability to understand the consequences of waiving those rights; access to advice from a parent or guardian; and the details of the interview, such as the length and intensity. *Id.* at ¶ 24, 42. Notably, the advice from or presence of a parent is one consideration but is not required. *See id.* at ¶ 24.

**{¶23}** The voluntariness of a *Miranda* waiver is different from the voluntariness of a statement; even if a *Miranda* waiver was valid, a statement can be coerced. The

question of whether a confession was voluntary invokes the due process clause of the Fourteenth Amendment, not the Fifth Amendment's right against self-incrimination. *Barker*, 149 Ohio St.3d 1 at ¶ 20, 38. "To satisfy due process with respect to a challenged confession, the state must prove by a preponderance of the evidence that the confession was voluntary. * * * The due-process test for voluntariness takes into consideration the totality of the circumstances." *Id.* at ¶ 38. "The totality-of-the-circumstances test takes on even greater importance when applied to a juvenile." *Id.* at ¶ 39 (rejecting application of a statute to a juvenile if it presumes the statement was voluntary merely because it was recorded). "The totality of the circumstances from which a court must determine the voluntariness of a juvenile's statement includes not only the details of the interrogation but also the juvenile's unique characteristics." *Id.* at ¶ 42. "While voluntary waiver and voluntary confession are separate issues, the same test is used to determine both, i.e., whether the action was voluntary under the totality of the circumstances." *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).

<u>*MIRANDA* WAIVER</u>

**{¶24}** Appellant sets forth two assignments of error, both addressing the trial court's denial of the motion to suppress his statement. Appellant's second assignment of error, which we address first, contends:

"Appellee, State of Ohio, violated Appellant Juvenile's Fifth and Sixth Amendment rights by failing to apprise Appellant Juvenile of those rights."

**{¶25}** In arguing the state failed to show he knowingly or intelligently waived his rights, Appellant says the detective's reading of *Miranda* rights from a pre-printed form did not truly advise him of his rights or the consequences of waiving those rights. Appellant does not believe the detective ensured he understood his rights and complains he was not directly asked if he wanted to waive his rights. In addressing the voluntariness of the waiver, Appellant raises threat or inducement in the detective's pre-*Miranda* statement that "truthfulness will determine if you stay at home tonight or somewhere else." He also believes the detective used subterfuge after reading Appellant his rights by asking him what day he entered the cabin, instead of whether he entered the cabin.

**{¶26}** First, there is nothing improper about an officer reading from a pre-printed *Miranda* rights form. In fact, this helps ensure compliance with each requirement of

*Miranda*. The detective read from what he said was a juvenile version of the form, which contained somewhat more than a bare bones statement of the *Miranda* rights. *Miranda* requires the suspect to be advised "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The detective's advisement to Appellant essentially said: before questions are asked of you, you must understand your rights; you have the right to remain silent; anything you say can and will be used against you in court; you have the right to talk to a lawyer for advice before we ask you any questions; if your parents are unable to pay for a lawyer, one will be appointed for you prior to any questioning if you so desire; if you wish to answer our questions now without a lawyer present, you have that right; you can stop answering questions at any time; and you also have the right to stop answering at any time until you talk to a lawyer.

**{¶27}** Sufficient information was provided to Appellant. Contrary to Appellant's suggestion, the detective did not mumble while reading Appellant his rights. The detective finished reading these rights and asked, "Okay?" to which Appellant answered, "Yes, sir." Regardless of whether this sufficiently ensured Appellant's understanding, the probation officer interjected with additional inquiries.

**{¶28}** After the rights were read and before questioning proceeded, the probation officer asked Appellant, "Do you understand all that?" Appellant replied, "Yes, sir." The probation officer then changed the nature of the response by asking if there was "anything you don't understand?" Appellant responded, "No, sir." The probation officer also inquired as to whether Appellant had "any questions about it?" Appellant answered, "No, sir." The detective then asked Appellant to sign the form to confirm that he read Appellant his rights.

**{¶29}** Appellant emphasizes: "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475. Appellant suggests this required the questioners to specifically ask if he wished to waive his rights. However, an express oral statement of waiver is not necessary. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 175, 560 L.Ed.2d 286 (1979). "The question is not one of form, but

rather whether the defendant in fact knowingly and voluntarily waived" his *Miranda* rights. *Id.* The statement in *Miranda* (that mere silence is not enough) "does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights." *Id.* Waiver can be inferred from the actions and words of the person interrogated. *Id.*

{¶30} On this topic, the Ohio Supreme Court recently addressed an argument that the police failed to secure a valid *Miranda* waiver because they did not specifically ask the suspect before the interrogation began whether he wanted to waive his rights and speak to them. In rejecting this argument, the Court explained: "a *Miranda* waiver need not be expressly made in order to be valid. * * * A court may infer a waiver from a suspect's behavior, viewed in light of the surrounding circumstances." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 188, citing *Butler*, 441 U.S. at 373

{¶31} Regarding Appellant's initial allegation of inducement, the inquiry as to what day a suspect committed a crime is not inducement as envisioned by the case law. As for the detective's pre-*Miranda* disclosure that "truthfulness will determine whether you sleep at home or somewhere else," Appellant states that this was a threat of incarceration. The state points out that there is nothing coercive about advising a suspect to be honest. For instance, where an appellant argued it was coercive for officers to "badger" him to tell the truth, the Supreme Court explained, "admonitions to tell the truth directed at a suspect by police officers are not coercive in nature." *State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991), citing *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989) (and an officer's suggestion of leniency does not invalidate a confession but is merely a factor in weighing voluntariness).

{¶32} Appellant emphasizes the detective's addition of the statement that his honesty would affect whether he would go home that night. In a Twelfth District case cited by the parties, a detective advised a fifteen-year-old during a custodial interrogation that he needed to be 100 percent honest when answering questions or he would go to the juvenile detention center, "probably" until he was twenty-one years old (in response to a question asking whether he would be able to go home that evening). *State v. A.P.*, 2018-Ohio-3423, 117 N.E.3d 840, ¶ 16 (12th Dist.). The juvenile argued he was coerced into waiving his rights and giving a confession due to improper police conduct involving

"threatening" him with detention until age twenty-one. *Id.* at ¶ 37 (on appeal after a no contest plea).

**{¶33}** The appellate court concluded the waiver was voluntary after finding the detective's statement "was not intended as a threat and was not misleading, as it emphasized the seriousness of appellant's conduct and the potential punishment associated with trafficking and possession of drugs." *Id.* at ¶ 38-39 (the court also found the confession was voluntary). As to the parenthetical observation, the issue of whether the detective's statement coerced the confession is addressed in the next assignment of error. Notably, a police officer can advise the suspect about any advantages of telling the truth and "it is not unduly coercive for a law-enforcement officer to mention potential punishments." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 196, 198.

**{¶34}** At this point, we must evaluate the detective's statement under the totality of the circumstances relevant to the *Miranda* waiver. Appellant was 13.5 years old. He was familiar with the other individual who assisted the detective in transporting and interviewing him. The probation officer (who asked the three aforequoted questions about whether he understood his rights) was Appellant's own probation officer for the past six months. He had frequent contacts with Appellant in that time. He opined that Appellant had a better understanding of the contents of a conversation than most juveniles with whom he dealt. Although the assistant school psychologist noted that Appellant once tested lower than average in fluid reasoning and processing, he was considered to be of average general intelligence. He had strong verbal skills and was able to express himself in a reasonable and logical manner. He went from acting disrespectful on the street to showing respect at the police station, demonstrating he understood the seriousness of his situation. There was no physical deprivation. Although Appellant was without a shirt, he was picked up in that condition while walking home from swimming; it was July, and the police station was approximately seventy degrees. He was not shivering and did not otherwise appear cold or uncomfortable.

**{¶35}** After the *Miranda* warnings, Appellant immediately admitted certain aspects of his participation in the offenses. In other words, there was no lengthy cajoling to get him to speak; in addition, this was the only police encounter related to this offense. The

total interview was brief, lasting 14 minutes (including the time to provide the *Miranda* rights and the writing of a statement at the end). The interview was not intense. Furthermore, Appellant had many past contacts with law enforcement for a juvenile of his age. Appellant had charges in four prior local cases and a prior Indiana case (for possessing marijuana). Considering the totality of the circumstances, there is no indication the trial court erred in overruling Appellant's argument that his waiver of *Miranda* rights was not knowing, intelligent, and voluntary. Accordingly, this assignment of error is overruled.

## COERCED CONFESSION

{¶36} Appellant's other assignment of error reads:

"Appellee, State of Ohio, violated Appellant Juvenile's Fifth Amendment right not to be forced to incriminate himself."

{¶37} To the extent the text of the assignment of error raises the voluntariness of the *Miranda* waiver, we refer to the arguments addressed supra in evaluating the totality of the circumstances on whether Appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights. In addition to arguing his waiver of *Miranda* rights was not voluntary due to the detective's statement, Appellant also suggests his confession was coerced and not voluntary even if the *Miranda* waiver was valid.

{¶38} As recited in the above section setting forth the general law, the voluntariness of a *Miranda* waiver is a different question than the voluntariness of a statement; e.g., even if a *Miranda* waiver was valid, a statement can be coerced. The question of whether a confession was voluntary invokes the due process clause of the Fourteenth Amendment, rather than the Fifth Amendment self-incrimination right. *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 20, 38.

{¶39} In the *A.P.* case reviewed in the prior assignment of error, the detective advised a fifteen-year-old during a custodial interrogation that he needed to be 100 percent honest when answering questions or he would go to the juvenile detention center, "probably" until he was twenty-one years old. In addition to finding the detective did not coerce Appellant into waiving his rights, the Twelfth District found the detective did not coerce the confession, pointing out the detective's statement was not intended to be a

threat and was not misleading merely because it emphasized the seriousness of the conduct and the potential punishment. *A.P.*, 2018-Ohio-3423 at ¶ 16, 37-39.

**{¶40}** Appellant suggests his case is similar to a United States Supreme Court case where an officer questioned a thirteen-year-old at school and said the juvenile would be placed in juvenile detention if they believed he would continue to break into homes. In that case, the lower courts found the confession was voluntary and *Miranda* was not required because he was not in custody. *J.D.B. v. North Carolina*, 564 U.S. 261, 268, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011). The United States Supreme Court only addressed the question of whether a court must consider a juvenile's age when determining whether a suspect was in custody for purposes of determining if *Miranda* warnings were required. *Id.* (finding age is a factor and remanding for a determination of whether the juvenile was in custody at the time of the interview). As the issue of whether the interrogation was custodial is not present in the case at bar, *J.D.B.* is not an analogous case (*except to the extent the lower courts found the officer's mention of detention did not make the confession involuntary*).

**{¶41}** "The totality of the circumstances from which a court must determine the voluntariness of a juvenile's statement includes not only the details of the interrogation but also the juvenile's unique characteristics." *Barker*, 149 Ohio St.3d 1 at ¶ 42. Here, there is no indication the detective lied when stating Appellant's truthfulness would determine whether he went home that evening. "Admonitions to tell the truth are considered to be neither threats nor promises." *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994).

**{¶42}** "Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant." *Ford*, 158 Ohio St.3d 139 at ¶ 198, quoting *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 111. Moreover, "it is not unduly coercive for a law-enforcement officer to mention potential punishments." *Ford*, 158 Ohio St.3d 139 at ¶ 198. We note that even in cases where an officer uses the interview tactic of lying about facts, this would not make a confession involuntary and would merely be one factor in the totality of the circumstances analysis. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 196.

**{¶43}** "While voluntary waiver and voluntary confession are separate issues, the same test is used to determine both, i.e., whether the action was voluntary under the totality of the circumstances." *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). We therefore, incorporate by reference the analysis in the prior assignment of error regarding the totality of the circumstances.

**{¶44}** In addition to the detective's statement to Appellant that his truthfulness would affect whether he went home that evening, we considered: Appellant's unique characteristics, including his age, mentality, and intelligence; his prior criminal experience with the police and the juvenile justice system in two states; his current probation status and resulting familiarity with one of the interviewers; the lack of parental presence; the reading of his rights; the time of day being afternoon; the brief length of the interview; the low intensity of the interview; the fact that this was a one-time encounter with the detective before the confession (as opposed to frequent, wearing interrogations); the lack of physical deprivation or mistreatment; and the alleged threat or inducement. *See Barker,* 149 Ohio St.3d 1 at ¶ 40-42 (use special care in scrutinizing juvenile's statement to ensure it was not coerced, suggested, or the product of ignorance of rights or of adolescent fantasy, fright or despair); *In re Watson*, 47 Ohio St.3d 86, 89-90, 548 N.E.2d 210 (1989) (finding juveniles, who were 12 and 14 years old, voluntarily waived their rights and confessed, despite absence of a parent or interested adult).

**{¶45}** In reviewing the video, Appellant did not appear impaired, intoxicated, or confused. *See State v. Brewer*, 48 Ohio St.3d 50, 58, 549 N.E.2d 491 (1990). Moreover, Appellant's friends had already given statements about their participation and what they witnessed. *See State v. Acquista*, 10th Dist. Franklin No. 95APA04-431 (Dec. 12, 1995) (the defendant confessed after watching the video in which his co-defendant incriminated him). There is no indication Appellant's will was overborne or his capacity for self-determination was critically impaired by coercive police tactics or otherwise. *See, e.g., Colorado v. Connelly*, 479 U.S. 157, 167, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (coercive police activity necessary prerequisite); *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Upon reviewing the totality of the circumstances, this courts finds the state showed the confession was voluntary and was not coerced by the detective's statement. This assignment of error is overruled.

{¶46} For the various reasons herein set forth, the trial court's judgment is affirmed.

Waite, P.J., concurs.

D'Apolito, J., concurs.

[Cite as *In re D.Y.*, 2020-Ohio-3758.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Monroe County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**