**[Cite as *State v. Smith*, 2024-Ohio-2674.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JA'NAZ SMITH,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-21

**O P I N I O N**

Appeal from Allen County Common Pleas Court
Trial Court No. CR2020 0430

**Judgment Affirmed**

**Date of Decision:  July 15, 2023**

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Ja'Naz Smith ("Smith"), appeals the April 27, 2023 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from the January 20, 2020 shooting death of the victim, when Smith, along with his accomplice, J.D., attempted to rob the victim at gunpoint. *See In re J.D.*, 3d Dist. Allen No. 1-22-20, 2023-Ohio-250. Smith was 15 years old at the time of the offenses at issue in this case.

{¶3} On April 17, 2020, a complaint was filed in the Allen County Court of Common Pleas, Juvenile Division, charging Smith with Count One of murder in violation R.C. 2903.02(A), an unclassified felony if committed by an adult, and Count Two of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree if committed by an adult. The complaint included a firearm specification under R.C. 2941.145 as to Count One. On May 13, 2020, Smith appeared by remote contemporaneous video and denied the charges in the complaint.

{¶4} Following a probable-cause hearing on August 12, 2020, the juvenile court concluded that there was probable cause to believe that Smith committed the conduct alleged in the complaint. Thereafter, the juvenile court conducted an amenability hearing on November 20, 2020. On December 10, 2020, the juvenile

court concluded that Smith was not amenable to care and rehabilitation within the juvenile system and ordered that his case be transferred to the Allen County Court of Common Pleas, General Division, for Smith to be tried as an adult.

{¶5} Subsequently, on January 14, 2021, the Allen County Grand Jury indicted Smith on Count One of aggravated murder in violation of R.C. 2903.01(B), 2929.02(A), an unclassified felony, Count Two of aggravated robbery in violation of R.C. 2911.01(A)(1), (C), a first-degree felony, and Count Three of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. The indictment included firearm specifications under R.C. 2941.145(A) as to Counts One and Two. On January 22, 2021, Smith filed a written plea of not guilty to the indictment.

{¶6} On March 1, 2021, Smith filed a motion to suppress his statement that he made to law enforcement. The State filed a memorandum in opposition to Smith's motion to suppress on April 6, 2021. Following a hearing on April 7, 2021, the trial court denied Smith's motion to suppress on April 29, 2021.

{¶7} The case proceeded to a jury trial on April 24-26, 2023. On April 26, 2023, the jury found Smith guilty of the counts and specifications alleged in the indictment. That same day, the trial court sentenced Smith to 20 years to life in prison as to Count One, 24 months in prison as to Count Three, and 3 years in prison

as to each firearm specification.[1] The trial court ordered Smith to serve the prison terms consecutively for an aggregate sentence of 28 years to life in prison. Further, the trial court merged Counts One and Two for purposes of sentencing.

{¶8} Smith filed his notice of appeal on April 28, 2023. He raises three assignments of error for our review.

### First Assignment of Error

**The juvenile court abused its discretion by transferring Smith's case to adult court for prosecution.**

{¶9} In his first assignment of error, Smith argues that the juvenile court abused its discretion by transferring his case to the general division for him to be prosecuted as an adult. Specifically, Smith argues that the juvenile court abused its discretion by rejecting the report and testimony of Dr. Thomas L. Hustak ("Dr. Hustak") to conclude that Smith was not amenable to care or rehabilitation within the juvenile system.

*Standard of Review*

{¶10} "In cases of a discretionary transfer, challenges to the trial court's findings regarding the amenability of the child to rehabilitation within the juvenile justice system are reviewed under an abuse of discretion standard." *State v. McDowell*, 3d Dist. Hancock No. 5-17-01, 2017-Ohio-9249, ¶ 13. An abuse of

---

[1] The trial court filed its judgment entry of sentence on April 27, 2023. (Doc. No. 308).

discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶11} "R.C. 2152.12 governs the transfer of a child from the juvenile court to the general division of the common pleas court." *State v. Bush*, 3d Dist. Logan No. 8-22-37, 2023-Ohio-4473, ¶ 20. Under R.C. 2152.12(B), a juvenile court has discretion to transfer a case for criminal prosecution if the court finds that (1) the child was 14 or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged; and (3) the child is "not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B) (2016) (current version at R.C. 2152.12(B) (2023)).

{¶12} When "making the amenability determination under subdivision (B)(3) of R.C. 2152.12, the statute requires the juvenile court to decide whether the factors in R.C. 2152.12(D) that favor transferring jurisdiction outweigh the factors in R.C. 2152.12(E) that favor retaining jurisdiction." *Bush* at ¶ 21.

{¶13} The version of R.C. 2152.12(D) applicable to this case sets forth the factors favoring a transfer of jurisdiction, and provides as follows:

> In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

R.C. 2152.12(D) (2016) (current version at R.C. 2152.12(D) (2023)).

{¶14} The version of R.C. 2152.12(E) applicable to this case sets forth the factors weighing against a transfer of jurisdiction, and provides as follows:

-6-

(E) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

R.C. 2152.12(E) (2016) (current version at R.C. 2152.12(E) (2023)).

{¶15} Moreover, under "the governing statute, the juvenile court is also required to 'order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child * * * .'" *Bush* at ¶ 23, quoting R.C. 2152.12(C).

**{¶16}** In this case, following an amenability hearing on November 20, 2020, the juvenile court transferred Smith's case to the general division for Smith to be tried as an adult after concluding that Smith was not amenable to care and rehabilitation within the juvenile system. In particular, in addressing the factors favoring transfer under R.C. 2152.12(D), the juvenile court found that the victim suffered serious physical harm—namely, death—as a result of the alleged offenses at issue in this case and that, even though "there was no evidence presented to indicate that the incident was gang-related, the evidence did establish that [Smith] participated in the alleged offense in organized concert with at least one other individual." (Doc. No. 1). *See* R.C. 2152.12(D)(1), (4). Moreover, the juvenile court found that Smith used a firearm during the commission of the alleged offenses, that he "was under community control supervision for a prior delinquent child adjudication for the offense of Domestic Violence," and that he "has previously been subjected to juvenile sanctions and programs" but that "[t]he results of those sanctions and programs indicate that rehabilitation of [Smith] will not occur in the juvenile system." (Doc. No. 1). *See* R.C. 2152.12(D)(5), (6), (7).

**{¶17}** In assessing the factors weighing against transfer under R.C. 2152.12(E), the juvenile court gave "significant consideration to the report and testimony" of Dr. Hustak, suggesting that Smith is "in the 'Lower Extreme' of overall intellectual functioning" and that he "'presents signs and symptoms of Conduct Disorder with strong oppositional features.'" (Doc. No. 1). *See* R.C.

2152.12(E)(6), (7). Further, the juvenile court found that Dr. Hustak concluded that Smith "presents a high level of dangerousness, a low level of maturity, and an average range of treatment amenability" but that "Dr. Hustak was unwilling or unable to state that, given the seriousness of the alleged offense, and [Smith's] history of violent conduct, there is sufficient time for [Smith's] rehabilitation to occur in the juvenile system in the 4 ½ remaining years." (Doc. No. 1). *See* R.C. 2152.12(E)(8).

{¶18} Ultimately, the juvenile court concluded that the "factors set forth in R.C. 2152.12(D) indicating that the case should be transferred outweigh the applicable factors set forth in R.C. 2152.12(E) indicating that the case should not be transferred, and that the safety of the community may require that [Smith] be subject to adult sanctions." (Doc. No. 1). Thus, the juvenile court transferred the case to the general division for Smith to be tried as an adult.

{¶19} On appeal, Smith contends that the juvenile court abused its discretion by concluding that the factors under R.C. 2152.12(D) supporting transfer of the case outweighed the factors under R.C. 2152.12(E) against transfer. Specifically, Smith contends that the juvenile court misconstrued Dr. Hustak's report and testimony "in order to reject his opinion that Smith was amenable to treatment as a juvenile." (Appellant's Brief at 10). Smith's argument is without merit.

{¶20} A defendant's "disagreement with the weight afforded the various statutory factors does not amount to an abuse of discretion." *State v. Morgan*, 10th

Dist. Franklin No. 13AP-620, 2014-Ohio-5661, ¶ 37. Indeed, "[t]he statutory scheme does not dictate how much weight must be afforded to any specific factor and, instead, rests the ultimate decision in the discretion of the juvenile court." *Id. See also Bush*, 2023-Ohio-4473, at ¶ 39 (noting that "when weighing those and any other relevant factors, the juvenile court has wide latitude in determining whether it should retain or relinquish jurisdiction over a juvenile").

{¶21} Critically, it is well settled that "a juvenile court is not bound by any expert opinion, and may assign *any* weight to the expert opinion that it deems appropriate." (Emphasis sic.) *State v. Everhardt*, 3d Dist. Hancock No. 5-17-25, 2018-Ohio-1252, ¶ 43. Certainly, "a juvenile court in making an amenability determination is entitled to disagree with the opinion of a medical expert and may take into account the severity of the offenses when considering whether a juvenile is mature enough for transfer and whether enough time exists to rehabilitate in the juvenile-justice system." *State v. Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, ¶ 21. "Ohio appellate courts have routinely affirmed discretionary transfer determinations even where experts have opined that the juvenile is not mature enough for transfer or opined that the juvenile was otherwise amenable to rehabilitation in the juvenile justice system." *Everhardt* at ¶ 43.

{¶22} In this case, the juvenile court properly weighed the R.C. 2152.12 factors and the record supports the juvenile court's findings. Specifically, the juvenile court elected to weigh the severity of Smith's conduct *over* Dr. Hustak's

report and testimony in assessing whether he is mature enough for transfer and whether enough time existed to rehabilitate him under the juvenile-justice system. Significantly, the juvenile court was free to accept or reject Dr. Hustak's opinion and consider the severity of the offenses and the safety of the community when making its amenability determination. *See Marshall* at ¶ 22 ("Although not explicitly listed in R.C. 2152.12(D), the seriousness of the underlying offenses and the safety of the community are relevant factors in the amenability determination.").

{¶23} Thus, we conclude that the juvenile court did not abuse its discretion by transferring Smith's case to the general division for him to be prosecuted as an adult after concluding that he was not amenable to care or rehabilitation within the juvenile system.

{¶24} Smith's first assignment of error is overruled.

## Second Assignment of Error

**The Court of Common Pleas did not have subject-matter jurisdiction over the aggravated robbery charge because the juvenile court never found probable cause to support a robbery.**

{¶25} In his second assignment of error, Smith argues that the trial court lacked subject matter jurisdiction over the aggravated-murder and aggravated-robbery charges since the juvenile court transferred the case with murder and tampering-with-evidence charges.

*Standard of Review*

**{¶26}** "Whether a court of common pleas possesses subject matter jurisdiction is a question of law that we review de novo." *State v. Borecky*, 11th Dist. Lake No. 2019-L-078, 2020-Ohio-3697, ¶ 9. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

*Analysis*

**{¶27}** "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 23. "'A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.'" *Id.*, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19. "'Rather, the focus is on whether the forum itself is competent to hear the controversy.'" *Id.*

**{¶28}** "Article IV, Section 4(B) of the Ohio Constitution provides that '[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law.'" *State v. Williams*, ___ Ohio St.3d ___, 2024-Ohio-1433, ¶ 36 (Kennedy, C.J., concurring in judgment only), quoting Ohio Constitution, Article IV, Section 4(B). The legislature has "exclusive authority * * * to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 2.

**{¶29}** "In Ohio, the juvenile courts have exclusive jurisdiction over cases involving juveniles alleged to have committed acts that would constitute criminal offenses if committed by an adult." *Williams* at ¶ 12. "However, a juvenile court relinquishes jurisdiction to the adult court through a mandatory- or discretionary-bindover proceeding when certain requirements are met." *Id.* That is, "[i]f a child is 14 years old or older when he or she is charged with an alleged act that would be a criminal offense if committed by an adult, the case may, and sometimes must, be transferred to adult court for prosecution." *Id.* at ¶ 37 (Kennedy, C.J., concurring in judgment only). *See, e.g.*, R.C. 2152.12(B) (2016) (current version at R.C. 2152.12(B) (2023)). Following the transfer of the case, "[t]he court to which the case is transferred for criminal prosecution * * * has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court * * * ." R.C. 2151.23(H) (2019) (current version at R.C. 2151.23(H) (2023)).

**{¶30}** In this case, Smith was charged in the juvenile court with murder in violation R.C. 2903.02(A) and tampering with evidence in violation of R.C. 2921.12(A)(1). The juvenile court determined that there was probable cause to believe that Smith—who was 15 years at the time he committed the alleged offenses—committed murder and tampering with evidence and that he was not amenable to care and rehabilitation within the juvenile system. Consequently, the juvenile court transferred Smith's case to the general division for Smith to be tried

-13-

as an adult. Subsequently, Smith was indicted on aggravated murder in violation of R.C. 2903.01(B), aggravated robbery in violation of R.C. 2911.01(A)(1), and tampering with evidence in violation of R.C. 2921.12(A)(1).

**{¶31}** On appeal, Smith argues that the trial court lacked subject matter jurisdiction over the aggravated-murder and aggravated-robbery charges because those charges were not charged in the complaint filed in the juvenile court and, accordingly, the juvenile court did not find that there was probable cause to believe that he committed those offenses. *Compare State v. Green*, 3d Dist. Marion No. 9-22-13, 2023-Ohio-4360, ¶ 146 (arguing that the trial court lacked subject-matter jurisdiction over [the felony-murder and felonious-assault charges] because they were not charged in the complaint filed in juvenile court, and accordingly, the juvenile court did not issue findings of probable cause for those offenses").

**{¶32}** However, at oral argument, Smith conceded that the Supreme Court of Ohio's recent decision in *Williams* controls the outcome of his second assignment of error. In that case, the court reaffirmed that "'a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are *rooted in the acts* that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred.'" (Emphasis added.) *Williams*, ___ Ohio St.3d ___, 2024-Ohio 1433, at ¶ 23, quoting *State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, ¶ 13. That is, "[a]n adult court is plainly not restricted to considering only the offenses for which the juvenile court found

-14-

probable cause." *Id.* at ¶ 18. "This includes new indicted charges that arise from a course of conduct or an event that has been properly bound over by the juvenile court." *Id.* at ¶ 23.

**{¶33}** Here, the aggravated-murder and aggravated-robbery charges are "rooted" in Smith's January 20, 2020 conduct that was alleged in the complaint filed in the juvenile court. *Accord Green* at ¶ 151 (resolving that the trial court had subject matter jurisdiction over Green's case because "Counts Two and Three of the indictment, and their accompanying firearm specifications, are based on conduct that occurred on January 18, 2021, conduct that was in the juvenile complaint against Green"). *See also Williams* at ¶ 24-26. Consequently, we conclude that the trial court had subject matter jurisdiction over the aggravated-murder and aggravated-robbery charges.

**{¶34}** Smith's second assignment of error is overruled.

### Third Assignment of Error

**Appellant's Right to remain silent under the Fifth Amendment and right to due process under the Fourteenth Amendment were violated by the admission of involuntary statements to law enforcement following a *Miranda* waiver that was not obtained knowingly, intelligently, or voluntarily.**

**{¶35}** In his third assignment of error, Smith argues that trial court erred by denying his motion to suppress evidence. Specifically, Smith contends that his statements to law enforcement are inadmissible because (1) he did not knowingly,

intelligently, and voluntarily waive his *Miranda* rights; (2) they were the product of police coercion; and (3) they were obtained without parental involvement.

*Standard of Review*

{¶36} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*

*Analysis*

{¶37} On appeal, Smith does not dispute the custodial nature of his interrogation. Instead, he argues that his statements to law enforcement should have been suppressed because those statements were involuntary, the product of coercive tactics, and obtained without "consultation with an interested adult prior to the interrogation * * * ." (Appellant's Brief at 21).

-16-

*Fifth Amendment*

**{¶38}** "The Fifth Amendment to the U.S. Constitution provides a privilege against self-incrimination." *State v. Edmond*, 10th Dist. Franklin No. 15AP-574, 2016-Ohio-1034, ¶ 11. "'Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to Miranda warnings where applicable.'" *In re K.W.*, 3d Dist. Marion No. 9-08-57, 2009-Ohio-3152, ¶ 12, quoting *State v. Thompson*, 7th Dist. Jefferson Nos. 98 JE 28 and 98 JE 29, 2001 WL 69197, *8 (Jan. 24, 2001).

**{¶39}** "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602 (1966). "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Law enforcement is "not required to administer *Miranda* warnings to every person they question." *In re R.S.*, 3d Dist. Paulding No. 11-13-10, 2014-Ohio-3543, ¶ 16. Rather, law enforcement "is required to administer *Miranda* warnings only where the individual questioned is subject to '*custodial* interrogation.'" *Id.*, quoting *State v. Biros*, 78 Ohio St.3d 426, 440 (1997).

**{¶40}** "The inherently coercive nature of custodial interrogation heightens the risk that a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can '"undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely."'" *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, ¶ 21, quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394 (2011), quoting *Miranda* at 467. "That risk is even more troubling and acute when, as here, the subject of the interrogation is a juvenile." *Id.*

> **{¶41}** Thus, when a
>
> custodial interrogation continues in the absence of an attorney after a police officer advises a suspect of his rights, the government bears "a heavy burden" to demonstrate by a preponderance of the evidence that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to

law enforcement. *Id.*, quoting *Miranda* at 475. *See also In re T.D.S.*, ___ Ohio St.3d ___, 2024-Ohio-595, ¶ 17 (affirming that, for "postwarning statements to be admissible, the state needed to prove by a preponderance of the evidence that [the juvenile suspect] waived his rights knowingly, intelligently, and voluntarily"). "A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact that the suspect eventually confessed." *Barker* at ¶ 23. "Rather, the record must show '"that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."'"

*Id.*, quoting *Miranda* at 475, quoting *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884 (1962). "If the state does not satisfy its burden, 'no evidence obtained as a result of interrogation can be used.'" *Id.*, quoting *Miranda* at 479.

{¶42} Primarily, Smith argues that, even though he "appeared to waive his *Miranda* rights at the outset of the first interview, that waiver was not knowing, intelligent, or voluntary." (Appellant's Brief at 18). Specifically, Smith contends that the totality of the circumstances suggest that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights because he "was only fifteen years old," had academic struggles, and (most significantly) "he was not comfortable talking without his mother being present * * * ." (*Id.*). The State refutes Smith's argument and contends that the totality of the circumstances—namely, that he "was almost sixteen, had prior criminal history, and showed the ability to reason, read, write, and bargain"—reflect that Smith's *Miranda* waiver was knowing, intelligent, and voluntary.

{¶43} "To determine whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights, courts examine the totality of the circumstances." *Barker* at ¶ 24. "When the suspect is a juvenile, the totality of the circumstances includes 'the juvenile's age, experience, education, background, and intelligence' as well as his 'capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'" *Id.*, quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560 (1979).

"A juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary." *Id.*, citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 96. However, "a juvenile's confession is not rendered involuntary where the juvenile does not have a parent, guardian, or attorney present." *In re J.D.*, 2023-Ohio-250, at ¶ 20.

{¶44} In this case, Detective Chad Kunkleman ("Detective Kunkleman") of the Lima Police Department interviewed Smith at the police department on April 13, 2020. Prior to proceeding with the interview, Detective Kunkleman advised Smith (verbally and in writing) of his *Miranda* rights. Smith responded that he understood his rights and signed the an admonishment form indicating as such. Nevertheless, Smith maintains that his waiver was not knowing, intelligent, or voluntary. We disagree.

{¶45} Considering the totality of the circumstances, we conclude that Smith knowingly, intelligently, and voluntarily waived his *Miranda* rights. Critically, Smith's prior experience in the juvenile system, his understanding of that system, and his communication with law enforcement indicate that his waiver of his *Miranda* rights was knowing, intelligent, and voluntary. *Accord In re T.D.S.*, ___ Ohio St.3d ___, 2024-Ohio-595, at ¶ 26. Significantly, the record reflects that Smith had prior delinquency adjudications (including a felony-level offense if committed by an adult) and was under community control at the time he committed the offenses at issue in this case. *See In re D.Y.*, 7th Dist. Monroe No. 19 MO 0021, 2020-Ohio-

3758, ¶ 35; *State v. Bush*, 3d Dist. Logan No. 8-22-37, 2023-Ohio-4473, ¶ 72 (noting that "Bush had extensive prior experience with law enforcement").

**{¶46}** Moreover, even through Smith was 15 years old, the video evidence reflects that Smith understood his rights as read to him by Detective Kunkleman, and that Smith was alert and engaged during the interview. *Accord In re A.S.*, 10th Dist. Franklin No. 20AP-18, 2020-Ohio-5490, ¶ 23. *See also Bush* at ¶ 72 (concluding that Bush "previously demonstrated the mental acumen necessary to understand and invoke his constitutional rights during questioning by police"). Indeed, while Smith contends that he struggled in a traditional school setting (and he was enrolled in an alternative school), the record reflects that Smith had advanced to the 11th grade and attained A's and B's when he attended classes. (*See* Nov. 20, 2020 Tr. at 29); (State's Bindover Ex. 3). *See also In re T.D.S.* at ¶ 20 (noting that "'deficient intelligence is but one factor in the totality of the circumstances that must be considered in determining the voluntariness of a waiver'"), quoting *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 190.

**{¶47}** Further, the record does not reflect anything atypical about the interview itself. *Compare In re M.H.*, 163 Ohio St.3d 93, 2020-Ohio-5485, ¶ 40 (detailing that the evidence in the record did not show "that there were any improper threats, inducements, deprivations, mistreatment, or restraints, and the 'interrogation' involved a single session lasting approximately 40 minutes"). That is, the interview lasted fewer than 90 minutes, with approximately 30 minutes of

that time being related to this case. Likewise, law enforcement provided Smith a break duirng the interview as well as a beverage, tissues, and a trash receptacle. *Compare In re J.D.*, 2023-Ohio-250, at ¶ 26 (analyzing that "even though J.D. spent approximately one hour and 10 minutes at the police department, his interview with Jennings only lasted for 37 minutes" and "[d]uring that time, J.D. was offered a variety of drink options and given several bathroom breaks").

**{¶48}** Finally, Smith's waiver of his *Miranda* rights was knowing, intelligent, and voluntary notwithstanding his contention that Detective Kunkleman "refus[ed] to allow him to consult with his mother." *See In re A.S.* at ¶ 23 ("The fact that no parent was present during the interview is not enough to conclude appellant did not knowingly and intelligently waive his rights"). Importantly, the record reflects that Smith equivocally indicated that he "kinda want[ed] to speak to [his] mom" during the portion of the interview related to another case but continued to speak to Detective Kunkleman. (*See* State's Suppression Exs. 1, 3). *See also Bush* at ¶ 73.

**{¶49}** Consequently, when considering the totality of the circumstances presented by this case, we conclude that Smith knowingly, intelligently, and voluntarily waived his *Miranda* rights. Nevertheless, Smith maintains that his confession was the result of police coercion.

*Due-Process Voluntariness*

**{¶50}** "The voluntariness of a *Miranda* waiver is different from the voluntariness of a statement; even if a *Miranda* waiver was valid, a statement can be coerced." *In re D.Y.*, 2020-Ohio-3758, at ¶ 23. "The question of whether a confession was voluntary invokes the due process clause of the Fourteenth Amendment, not the Fifth Amendment's right against self-incrimination." *Id. See also State v. Carse*, 10th Dist. Franklin No. 09AP-932, 2010-Ohio-4513, ¶ 23 ("Using an involuntary statement against a defendant in a criminal trial is a denial of due process of law.").

**{¶51}** "Constitutional principles of due process preclude the use of coerced confessions as fundamentally unfair, regardless of whether the confession is true or false." *Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, at ¶ 31. "'[C]oercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause.'" *Id.*, quoting *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515 (1986).

**{¶52}** "'The due-process test for voluntariness takes into consideration the totality of the circumstances.'" *In re D.Y.* at ¶ 23, quoting *Barker* at ¶ 38. *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041 (1973) (noting that statements are considered involuntary when, under the totality of the circumstances, the "defendant's will was overborne"). That is, "[w]hile voluntary waiver and voluntary confession are separate issues, the same test is used to determine both,

i.e., whether the action was voluntary under the totality of the circumstances." *In re D.Y.* at ¶ 23, quoting *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). Some of the circumstances that are commonly considered include the defendant's age, education, intelligence, and knowledge of his rights; the duration and nature of detention and questioning; and whether physical punishment was used or threatened. *Schneckloth* at 226. "When a defendant challenges his confession as involuntary, due process requires that the state prove by a preponderance of the evidence that the confession was voluntary." *Barker* at ¶ 32. "The same standard applies to adults and juveniles * * * ." *Id.*

{¶53} Here, much of Smith's argument focuses on the absence of his mother during the interview. Likewise, Smith contends that law enforcement's interview tactics—namely, "challeng[ing] Smith's manliness," "play[ing] on Smith's stated fear of wasting his young life away in prison," and "claim[ing] to have evidence that they did not"—improperly induced him to confess. (Appellant's Brief at 20). However, based on our review of the video evidence, we conclude that the totality of the circumstances reflect that Smith's confession was voluntary and was not the result of police coercion. *See In re D.Y.* at ¶ 45.

{¶54} "'Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant.'" *Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, at ¶ 198, quoting *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 111.

Likewise, "it is not unduly coercive for a law-enforcement officer to mention potential punishments." *Id.* "[E]ven in cases where an officer uses the interview tactic of lying about facts," that tactic does not render "a confession involuntary and would merely be one factor in the totality of the circumstances analysis." *In re D.Y.* at ¶ 42.

{¶55} Drawing from our analysis above, the totality of the circumstances reflect that Smith's confession was not the result of police coercion. That is, none of Smith's unique characteristics, Smith's equivocal request to consult his mother, or law enforcement's interview tactics rendered Smith's confession involuntary. *See Ford* at ¶ 20 ("After reviewing the video of Ford's interview, we are not persuaded that the detectives' references to the death penalty were threats or that their remarks resulted in Ford's will being overborne.").

*Parental Involvement*

{¶56} Finally, Smith urges this court to adopt a rule requiring the "consultation with an interested adult prior to the interrogation of a juvenile." (Appellant's Brief at 21). We decline to do so. Decisively, "[t]he state of Ohio has declined to join other states that provide per se rules that invalidate a juvenile's *Miranda* waiver without additional protections, such as requiring a parent or guardian present, during an interrogation." *In re A.S.*, 2020-Ohio-5490, at ¶ 22. "The Supreme Court of Ohio has also declined to require a parent or guardian present during the interrogation of a juvenile" because there is "'"no requirement in

*Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement.""" *Id.*, quoting *State v. Barker*, 1st Dist. Hamilton No. C-130214, 2016-Ohio-7059, ¶ 13, quoting *State v. Bell*, 48 Ohio St.2d 270, 276-277 (1976), *rev'd on other grounds, Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977 (1978).

{¶57} For these reasons, Smith's third assignment of error is overruled.

{¶58} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER AND BALDWIN, J.J., concur.**

**/hls**

**\*\* Judge Craig Baldwin of the Fifth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**